# JOSEPH H. BRADLEY

## vs.

# GEORGE P. FISHER.

1. A count to recover damages against a judge, for making an order striking plaintiff's name from the roll of attorneys, is fatally defective if it, in effect, admits the authority and jurisdiction of the judge to pass the order, though it aver that the order was made without good or probable cause, "tyrannically, oppressively, maliciously, and corruptly," for if the authority and jurisdiction of the court to pass the order be admitted, no evidence can be given to the jury as to the motives of the judge in passing it.

2. In such an action, a plea which denies only the accidents and immaterial circumstances of the offense as stated by the judge in his order will be taken as a confession of the offense itself.

3. It is necessary, therefore, not only to prove, but to allege in the declaration, that the act of the judge in making the order was done both without jurisdiction and from malicious motives or corruptly.

4. A court may sometimes exceed its jurisdiction, but unless the excess of jurisdiction is both palpable and malicious or corrupt on the part of the judge he is not liable in an action for damages in consequence of his judgment, and whether he has so transcended his jurisdiction is a question for the court and not for the jury ; for questions of jurisdiction are always questions of law.

5. The judge's own observation is not only sufficient to originate his jurisdiction over a case of unprofessional conduct on the part of an attorney, but is likewise sufficient to authorize whatever judgment he may pronounce, his own knowledge so obtained, and as to which he is himself to decide, cannot be contradicted by witnesses called to contradict that knowledge ; *aliter* where the judge has doubts as to what he saw or heard.

6. Where the declaration avers that the order was made "against the will and objection of the plaintiff," such averment will be taken as an admission on the record that the plaintiff was present in court at the time of the making of the order, and will amount to a constructive waiver of notice.

7. And *quære*, if there had been no such waiver, whether notice was necessary, for while it is perhaps better and more consistent with that order and dignity befitting a judicial tribunal to lay a rule in such a case, yet the indignity offered by an attorney to a judge may amount to such an enormity as to justify his instant dismissal, and if the judge possess such power in any case he may exclusively determine as to the proper occasion for its exercise in every case.

8. The act of a court in dismissing an attorney from the bar for his conduct is not a criminal, nor a quasi-criminal proceeding, nor is the order a personal punishment, but a mode of the court to get rid of an improper officer.

9. The distinction as to the necessity for notice of the proceeding seems to be this : Where the judge acts upon his own observation of the conduct of the attorney, whether in or out of court, charges need not be made, nor notice given, but where charges are made notice should be given.
10. The Act of Congress of March 2, 1831 (4 Statutes, 487), applies only to contempts of court of the United States, and not to cases of professional misconduct of attorneys.
11. The Criminal Court of this District is not one of the several courts of the United States within the purview of the Act of March 2, 1863.
12. Under the Act of Congress of the 16th of February, 1853, the trial of a cause extending beyond the time fixed for the expiration of the term does not in contemplation of the law end until the adjournment of the court, although the jury has been discharged ; hence an order after the discharge of the jury, but before such adjournment, and relating to the misconduct of an attorney during the trial is to be regarded as one of the incidents of the trial.

At Law. No. 4961. Decided December 4, 1869.

MOTION by plaintiff for a new trial on exceptions, certified to be heard in General Term in the first instance.

Action on the case by an attorney at law to recover damages alleged to have been sustained in consequence of an order striking his name from the roll of attorneys, made by the defendant whilst claiming to hold a term of the Criminal Court of this District as one of the justices of the Supreme Court of the District of Columbia assigned to that duty, which order plaintiff averred was made without authority or jurisdiction, and maliciously, corruptly, etc.

THE FACTS are fully stated in the opinion.

Mr. JOSEPH H. BRADLEY *pro. per.:*

1. The defense is, that at the time of the alleged commission of said supposed trespass the defendant, as one of the justices of this court, was regularly and lawfully holding a Court of Record, to wit, the Criminal Court of said District, and having general jurisdiction of crimes and offenses arising within said District, and the supposed trespass consisted of an order and decree of the said Criminal Court, made by said defendant in the lawful exercise and performance of his authority and duty, as the presiding justice of said Criminal Court, for official misconduct and misbehavior of said plaintiff (he, the plaintiff, then and

7DC—3

there being one of the attorneys of said Criminal Court), occurring in the presence of the said defendant, as justice of said Criminal Court holding as aforesaid, and not otherwise.

The proof is, he had been holding the March term of the said court, and continued to hold it after the June term commenced, for the purpose of completing the trial of a cause begun before that term commenced; and the cause had been terminated, and the jury discharged, and the prisoner remanded to prison; and the term had ended before the defendant made the said order and decree, as he calls it in his plea; and the court was not sitting.

Again: The record does not show that the court was sitting when the alleged offense of the plaintiff was committed, or that the plaintiff had any notice or an opportunity to be heard.

If it appears on the face of the record of the proceeding claimed to be judicial, either that there was no case for the judgment of the court, or that the defendant therein had no notice of the proceeding and did not voluntarily appear, the proceeding is *coram non judice* and void as a judgment at law, and it will not afford any protection, justification, or excuse to the judge pronouncing the order or decree, when called in question collaterally in any other court. Kemp's Lessee *vs.* Kennedy, 5 Cra., 173; McCormick *vs.* Sullivant, 12 Wheat., 199; Elliot *vs.* Piersol, 1 Pet., 340; Voorhees *vs.* The Bank of the U. S., 10 Pet., 449; Hollingsworth *vs.* Barbour, 4 Pet., 475; 14 Pet., 154; 8 How., 495; 11 How., 437; 2 How., 319; 2 How., 33; 9 How., 336; 14 How., 586; 22 How., 488; 22 How., 1; 1 Wallace, 634; 2 Wall., 342; 3 Wall., 397; Sheldon *vs.* Newton, 3 Ohio, 498; Seeley *vs.* Reed, 3 Green (Iowa), 374; Reed *vs.* Wright, 2 Iowa, 15; Hall *vs.* Williams, 6 Pick., 232; Bloom *vs.* Bendick, 1 Hill, N. Y., 140; Moore *vs.* Starks, 1 Ohio, N. S., 369; Hess *vs.* Cole, 3 New Jersey, 116; Ferguson *vs.* Mahon, 11 A. & E. 179; The Queen *vs.* Bolton, 1, 2 B., 71; Houlden *vs.* Smith,

142 B., 841; Howard vs. Gossett, 102 B., 349, 411; Smith's Leading Cases (1866), Sec. 834 and cases cited.

And this rule applies to cases of contempt equally as to any other cases.

2. The defendant's plea sets up that he was holding the Criminal Court of the District of Columbia, which is a Court of the United States, and he was in terms, by the Act of 3d March, 1831, prohibited from the jurisdiction claimed in the premises.

3. The extent of his power and jurisdiction was to punish by fine or imprisonment, or both. He could not disbar. If from malicious and corrupt motives he exceeded his jurisdiction, the fact that he claimed to be acting as a court and acted erroneously cannot afford him any protection.

See the cases cited and referred to under the fourth point, and especially 9 Johns., 407 to 413, and 432, and the following.

4. If he were holding a court of record with such jurisdiction as the Criminal Court of this District has, and had jurisdiction and discretion to adjudge and punish for a contempt, and although the record on its face may show that the person and offense in the particular case were both within his jurisdiction—if he acted willfully and corruptly in the matter, and with express malice towards the plaintiff, and with intent to injure him, it is competent for the plaintiff, on proper and fitting allegations in his declaration, to prove those facts; to contradict the record by parol proofs, and show that in point of fact the whole statement contained therein is a fabrication and false.

*a.* Because no man is to be condemned under the law of the land without an opportunity of being heard.

*b.* No court can create a jurisdiction for itself by its own statement of facts put on record, without any proceedings as the basis of such record.

*c.* Willful abuse of power, corrupt exercise of office, express malice toward an individual, and working intentional

injury to him, by means of false entries made by a judge on
the records of a court of general jurisdiction, are not judicial
acts, and are not within the discretion of a judge; and satis-
factory proof of those facts is admissible in evidence in an
action to redress the wrongs done by such acts, to show that
in the particular case the judge attempted to create for him-
self a jurisdiction and discretion not given by the law.　10
Rep., 76, a, b; 2 Strange, 994; 3 Wils., 345; 2 T. R., 225;
5 Taunt., 500; 1 Marsh., 220; Rep., T. Hardw., 64; 3 M. &
S., 411; 1 B. & C., 169; 14 Ad. & El., N.'S., 841; 15 Ad.
& El., N. S., 240; 2 Stark. Ev., 807; 5 John., 282; 9 John.,
395; 12 John., 251; 3 E. Maine, 330; 24 Vt., 143; 2 Gray,
·120; 4 Gray, 83; 11 Cush., 315; 2 Harr., N. J., 58; 7
Ohio, N. S., 42.

Messrs. W. A. COOK and A. G. RIDDLE for defendant:

The first question which arises is in relation to the char-
acter of the Criminal Court of the District.　This, so far as
this court is concerned, may be regarded as determined.
In the case of *Ex parte* Bradley it is said:

"That the Criminal Court is a *separate* and *independent
court* invested with all the criminal jurisdiction to hear and
punish crimes and offenses within the District."

It is therefore a court, not only of record, but of general
jurisdiction.　*Ex parte* Bradley, 7 Wall., 371.

And substantially the same had been decided in reference
to the Circuit Court of the District of Columbia, in 1830:

"The Circuit Court of the District of Columbia is a court
of record, having *general* jurisdiction over *criminal* cases."
*Ex parte* Tobias Watkins, 3 Peters, 370.

The inherent power of the court:　Such being the char-
acter of the court, its power as respects attorneys must be
complete; and in the absence of any express legislation, it
has full power to imprison or disbar for contempt or mis-
conduct.　This is a power inherent in all courts of record.

"Certain implied powers must necessarily result to our

courts of justice from the nature of their institution. But jurisdiction of crimes against the State is not among those powers. To fine for contempt, imprison for contumacy, enforce the observance of order, etc., are powers which cannot be dispensed with in a court, because they are necessary to the exercise of all others; and so far our courts possess powers immediately derived from statute." United States *vs.* Hudson, 7 Cranch, 34.

Jurisdiction existing, the action of the court is conclusive, although erroneous or irregular.

Wherever jurisdiction exists, or from whatever source derived, its exercise is conclusive; nor will an action lie for damages even if the exercise of it *has* been erroneous or irregular.

The authorities in support of the position are numerous and familiar. Yates *vs.* Lansing, 5 John., 282, and cases cited.

But there is express legislative power, so far as the courts of the District of Columbia are concerned. By the Act of 1719, Chap. 4, Sec. 2, of the Laws of Maryland, it is enacted, "That the several magistrates, judges of the several courts within this province, be, and are hereby, authorized and *strictly required to observe the demeanor of all practitioners of the law before them*, as well as all ministerial officers, or other persons, who shall use *any indecent liberties* to the lessening of the grandeur and authority of their respective courts, and to discountenance and punish the same, according to the nature of the offence, *either by suspending* such practitioners of the law from their practice perpetually, or for a time, or to punish such practitioners, or ministerial officers, or other persons, by fine at the discretion of such court, before whom such offence shall be committed, not exceeding 4,000 pounds of tobacco in the superior court, nor 2,000 pounds of tobacco in the several county courts within this province on each offender for any one offence." 1 Kilty's Laws of Maryland, 1799, Ch. 4, Sec. 2.

That this law is in force in this District will, perhaps, not be disputed.

In 1803 this Supreme Court stated "that it was not the object of Congress to change in any respect the existing laws further than the new situation of the District rendered indispensably necessary." United States vs. Simms, 1 Cranch, 258.

And it has been repeatedly decided that it has common law powers; thus differing from the courts of the United States. The power, therefore, of the Criminal Court of the District to expel a practitioner for misconduct is obvious. Kendall vs. United States, 12 Peters, 613, 614.

The Acts of 1789 and of 1831 are not applicable. It will be observed that the existence of this power is not traced to either the Act of Congress of 1789 or 1831. 1 Stat. at L., 83, Sec. 17; 4 Stat. at L., 487, Sec. 1.

For neither of these acts refer to the courts of the District of Columbia, either in terms or by intention. They do not do so in terms. The Act of 1789 is entitled, " An act *to establish the judicial courts of the United States.* It creates the *Supreme Court* of the United States; provides that the United States shall be divided into *districts,* thirteen in number, and forms the *circuit* courts of the United States.

The 17th section provides, " that all the *said* courts shall have power * * * to punish by fine or imprisonment at the discretion of *said* courts all *contempts* of authority in any cause or hearing before the same, and to make and establish all necessary rules for the orderly conducting of business in the said courts, provided said rules are not repugnant to the laws of the United States. 1 Stat. at L., 83.

The act was passed about twelve years before the cession of the District by Maryland and Virginia, and could not of consequence refer to a court of the District.

This Act of 1831 refers exclusively to the Act of 1789— is declaratory of it.

It is an historical fact that it grew out of occurrences in the *United States Courts*, and when it was passed the statutory regulations of Maryland in relation to the conduct of attorneys was in force in the District, and it was unnecessary to legislate on the subject matter embraced in that act. It is therefore "*the courts of the United States*," that is, courts created under Article III, Section 1, of the Constitution, which are referred to in the Act of 1831, and not territorial courts, *nor the courts of the District of Columbia.* The latter exists primarily under Article 1, Section 8, of the Constitution of the United States:

" To exercise exclusive legislation in all cases whatsoever over such District (not exceeding 10 miles square) as may by cession of particular States and the acceptance of Congress become the seat of Government of the United States, and to exercise like authority over all places purchased by the consent of the legislature of the State in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings."

It is true they are created by the power of the Constitution under laws of the United States, but they are not technically courts of the United States or embraced in the words, " the several courts of the United States," as used in in the Act of 1831. Nor have any of the acts in reference to the courts of the District used the phrase, " courts of the United States." It is never applied in the legislation of Congress to the courts of the District. 2 Stat. at L., 103, 104; 5 *Id.*, 306.

If, then, the Criminal Court of the District of Columbia is not technically a court of the United States, if the Acts of 1789 and that of 1831 refer to courts which are strictly courts of the United States, their provisions with regard to contempts or offenses of attorneys do not include the Criminal Court of the District, and if they do not they were not obligatory on the defendant, furnished no rule for his Government, when the order of August 10, 1867, was made, and his

action must be considered in reference to the common law or the inherent power of the court and the law of Maryland incorporated into that of the District, and by these his jurisdiction to expel was full and complete.

It is true, in *Ex parte* Bradley, 7 Wall., 304, the court appears to consider that the Act of 1831, embraced the courts of the District; but, apart from the fact that the case was *ex parte*, the question was not raised in the answer of the judges of the Supreme Court of the District, nor necessarily involved in the case. See Cohen *vs.* Virginia, 6 Wheat., 399.

But if the view presented is erroneous, if the Acts of 1789 and 1831, include the Criminal Court of the District of Columbia, the power to punish for contempt or misconduct exists under these laws as well as at common law and under the Statute of Maryland. They do not destroy the jurisdiction. It is only modified and controlled by them, and only so far as respects "*contempts* of court."

" For misbehavior of any person or persons in the presence of the court, or so near thereto as to obstruct the administration of justice."

The power to issue attachments and inflict summary punishment for contempt exists, therefore, under the Acts of 1789 and 1831.

The *fact* of contempt is one of which the court must be the sole judge. The Act makes this so by confining the action of the court to cases occurring in its presence, or so near as to disturb its deliberations.

It gives in these cases absolute jurisdiction of subject matter and of the person. It is certain, therefore, that even under the Acts of 1789 and 1831, it was competent for the defendant or appellee to notice and punish the contempt or misbehavior of the plaintiff.

The true doctrine of this case appears to be this: " No action will lie against a judge for any act which he does in the capacity of a judge." Randall *vs.* Brigham, 7 Wall., 523.

The motives and purposes of the judges of courts of general jurisdiction, cannot be questioned or assailed. Pratt *vs.* Gardner, 2 Cush., 68; Passmore Williams Case, 26 Pa., 18, 19; Harman *vs.* Brotherson, 1 Denio, 539; Weaver *vs.* Dessendorf, 3 Id., 120; Yates *vs.* Lansing, 5 John, 293–295; Clark *vs.* The People, 1 Bre., 266; 6 B. & C., 613 (Eng. C. L. Rep., Vol. 13).

It would not be difficult to increase these authorities. They certainly sustain the position that the motives or purposes of a judge of a court of record cannot be made the subject of judicial examination.

And, hence, no action could be sustained against the appellee, for it was his motives and purposes which it was proposed to "put in issue" before the jury.

The record of a court of general jurisdiction cannot be contradicted by parol proof or collaterally. But while the motives or purposes of a decision or order of a judge of a court of general jurisdiction cannot be the subject of examination "at the suit of an individual," its records cannot be contradicted by parol proof, or be collaterally impeached.

To allow this would be as disastrous and injurious as inquiries affecting the motives and designs of judicial decisions. Neither can be tolerated.

1. Ordinarily a record imports "absolute verity." Fischel's English Constitution, 337.

2. This is so fully and generally set forth in the authorities as almost to preclude a reference to them.

3. A record of a court of general jurisdiction can only be assailed or reversed by motion or an appeal.

4. It cannot be assailed indirectly and must be received as "imparting absolute verity" in all courts in which it may be presented.

5. Its statements or recitals must be regarded as true, and irregularities do not affect its validity.

6. It can never be regarded as a nullity; not even if the "jurisdiction is not alleged in the proceedings." Voorhees *vs.* Bank of United States, 10 Peters, 472.

This case is full and exhaustive. McCormick *vs.* Sullivant, 10 Wheat., 199 ; Kennedy *vs.* Georgia State Bank, 8 How., 611.

These cases are general. A few may be cited which are more particular and relevant. *Ex parte* Watkins, 3 Peters, 202, 203 ; *Ex parte* Kearney, 7 Peters, 42, 43.

The appellant acquiesced in the order of the Criminal Court, and he could not afterwards assail it.

Indeed it may well be doubted if the appellant is not by his own act deprived of any right to assail the record or to make the action of the defendant the foundation of an action.

The act of March 3, 1863, Section 5 (2 Br. Dig., 177), creating the court of the District, provides that " any party aggrieved by an order, judgment, or decree made or pronounced at any such *special* term, if the same involve the merits of the action or proceeding, may appeal therefrom to the *General* term of said Supreme Court, and upon such appeal the General Term shall review such order, judgment, or decree and affirm, reverse, or modify the same as shall be just." The distinction here seems to be this : The "separate" courts, circuit, equity, and criminal, are each a "*special term*," considered in relation to the "*General* Term." A "*special* term" is complete in itself, presided over by a single judge, while the "*General* Term" is comprised of all the judges. The first have original jurisdiction, the second chiefly appellate powers.

An appeal would, therefore, seem to be authorized to the General Term from an "order," &c., of the Criminal Court ; and if it be so, there was an appropriate method in which the order disbarring the appellant could have been reviewed, and if any errors existed in it, corrected, or reversed.

No attempt, however, was made to secure any revision of it. It secured the acquiescence of the appellant. How, then, could he subsequently complain of the order or base

an action for damages on it. See Cooley's Const. Lim., 451,. 552, 2d Ed.

But the action of the appellant seems to be misconceived in other respects.

The declaration regards the order of the Criminal Court as complete and effective. It distinctly avers that by it the appellant was deprived of his right to practice, &c.

But if it was " null and void " or if it could have been reversed, or corrected on " review " it could not have the effect attributed to it, except by the choice or act of the appellant.

And no suit can be maintained for an act which only becomes potential for injury in consequence of the indifference or co-operation of a party himself.

But a more grave and conclusive objection encounters the action. It arises from the pleadings.

The action is instituted " in the Supreme Court of the District of Columbia."

The averment of the first count is that the plaintiff was " deprived of his rights to practice in *this* court as an attorney of *this* court;" *i. e.*, the Supreme Court of the District of Columbia."

And the Criminal Court is described as *one of the branches* of the said Supreme Court. And this count concludes with the statement that it was the intention to strike the name of the plaintiff from the roll of attorneys practicing in *this* court—the Supreme Court of the District of Columbia.

The second count in this respect corresponds with the first.

It commences with the averment that the plaintiff was in the lawful possession of the office of attorney at law, with the right and privilege at all times freely to enjoy said office by practicing as an attorney at law in any of the courts of the said District, and, referring to the order of removal, states that it was "an order removing the plaintiff from the office of an attorney at law in the said Supreme Court of the District of Columbia."

It is of this "removal" and of the assumed pecuniary consequences that the plaintiff complains.

There is no count in reference to removal as an attorney of the Criminal Court, nor any averment of damages for *such* removal. Yet the order of *disbarment* was made in the Criminal Court of the District; and this court has determined that the *Criminal Court* is a *separate and independent* court; "*distinct from the Supreme Court*," possessing "*ample powers itself* to take care *of its own dignity and punish the offender.*" *Ex parte* Bradley, 7 Wall., 372.

Such are some of the positions which it has been deemed proper to present on behalf of the appellee.

It may not, however, be improper to glance at one or two of the positions which the appellant seems to regard of special importance.

It is insisted that the entire order is void for want of notice.

But the authorities cited establish the position that however irregular or erroneous the proceedings of a court, if in any form it could have been instituted, the court is protected.

Jurisdiction, or power to act on the subject-matter constitutes of itself a complete defense. Yates *vs.* Lansing, 5 John., 26 Pa., 17, 18; Cooley's Const. Lim., 2d Ed., 440.

But notice or process is not required in all cases.

It is true, it is said in Magna Charta and in the Constitution, that no person shall be deprived of his life, liberty or property without due process of law. Process generally refers to a writ or warrant, but it is not confined to this.

"This word comprehends any lawful warrant, *authority*, or proceeding by which a man may be arrested." 2 Inst., 51, 52.

And it has been expressly decided, that the cited provision of Magna Charta and the Constitution, do not include "cases of contempt." *Ex parte* Burr, 2 Cr. C. C. R., 390, 393.

The point as to notice was distinctly made in *Ex parte* Secombe, 19 How., 14, 15; and see 4 Blackstone's Com., 284, 287, Sharswood's Ed., 283, 286.

It is true that in *Ex parte* Garland, 4 Wall., 378, it is said that "they [attorneys] hold their office during good behavior, and can only be deprived of it for misconduct, ascertained and declared by the judgment of the court, after opportunity to be heard has been afforded."

But if the latter part of this sentence is more than *dictum*, it must be considered in connection with the late case of *Ex parte* Bradley and Randall *vs.* Broghan; and in these it is determined that notice is not necessary where *offenses* or misconduct occur in open court.

And the declaration contains this important averment, that the defendant, on the 10th day of August, 1867, at the county and district aforesaid, unlawfully and without the leave or license, and *against the will and objection*, struck the name of the plaintiff off the roll of the attorneys of the Supreme Court of the District.

Here is a direct admission that the plaintiff was not only present, but that he *objected* to the order of the court.

These facts are not set out in the order; but it is always to be presumed that a court acts properly.

And what the order admits (if essential), the declaration supplies.

Nor can the admission be contradicted in other parts of the declaration; for this would create a repugnancy destructive of the case; at least so far as respects the facts of the presence of the appellant and of notice to him. Gould's Pleadings, Ch. 111, Secs. 172, 173.

"Contempt" is defined to be "a disobedience to the court; or an opposing or despising the authority, justice, or dignity thereof." Mosely on Inferior Courts, London, 1845, page 35.

Mr. Justice WYLIE delivered the opinion of the Court:

This case was tried at the Circuit Court before one of the

justices of this court, where several offers of evidence made by the plaintiff were overruled, and bills of exception taken to the rulings. On these exceptions a new trial was moved for in that court on the ground that there was error on the part of the court in excluding the evidence offered, and this motion was certified to this court, to be heard here in the first instance.

It was an action on the case brought by the plaintiff to recover damages of the defendant, in consequence of an order made by the latter, whilst claiming to hold a term of the Criminal Court of this District as one of the justices of this court assigned to that duty, and which the plaintiff avers was made without authority and without jurisdiction on the part of the judge to make it, and maliciously, corruptly, &c. But the denial of jurisdiction is contained only in the second count. The order was made on the 10th of August, 1867, and is in the following words:

"The court orders the following to be entered of record, to wit: On the second day of July, last, during the progress of the trial of John H. Surratt, for the murder of Abraham Lincoln, immediately after the court had taken a recess to the following morning, as the presiding justice was descending from the bench, Joseph H. Bradley, Esq., accosted him in a rude and insulting manner, charging the judge with having offered him (Bradley), a series of insults from the bench from the commencement of the trial. The judge disclaimed any intention of passing any insult whatever, and assured Mr. Bradley that he entertained for him no other feeling but that of respect. Mr. Bradley, so far from accepting this explanation or disclaimer, threatened the judge with personal chastisement.

No court can administer justice or live if its judges are to be threatened with personal chastisement on all occasions, whenever the irascibility of counsel may be excited by imaginary insult. The offense of Mr. Bradley is one which even his years will not palliate. It cannot be overlooked or go unpunished.

It is therefore ordered that his name be stricken from the roll of attorneys practising in this court."

(Signed)                           GEO. P. FISHER,

*Justice of the Supreme Court of the District of Columbia.*

The declaration consists of two counts: The first charging that the said order was read in open court, and recorded on the minutes of the court, and was made without any reasonable or probable cause, and that the conduct of the defendant in making the said order was willful, malicious, oppressive, and tyrannical, and that thereby the plaintiff had been deprived of his right to practice as an attorney of the court.

This count contains no averment that the order was not an order of the court or that the judge was without jurisdiction to make it.

The second count alleges that the order in question was made without authority or jurisdiction on the part of the judge; that the order was in fact not an order of the court at all, and was made "without the leave or license and against the will and objection of the plaintiff * * * wrongfully, corruptly, maliciously, and unjustly, and without any reasonable or probable cause therefor, * * * and contrary to the statutes in such case made and provided, and was summary and wholly without notice of any kind given to the plaintiff," and denies the truth of the statement of facts contained in the judge's order, specifically and *seriatim,* but in the manner on which we shall have occasion to make some observations presently.

To this declaration the defendant pleaded, first, the general issue; and, second, a special plea setting out the fact that at the time the order was made the defendant was holding by virtue of lawful authority a term of the Criminal Court of this District, a court of record of general jurisdiction, &c., and that said order was a lawful order, made by said court in the exercise of its rightful authority, jurisdiction, &c.

To this second plea of the defendant, the plaintiff replied *de injuria*, &c., and issue was joined on both pleas.

It is too plain for discussion, that the first count of plaintiff's declaration is so fatally defective that the court below was right to exclude any evidence offered by the plaintiff to sustain it.

It admits the authority and jurisdiction of the judge sitting in and holding court at the time to make the order, and it admits the effect of the order to strike the plaintiff's name from the roll of attorneys of the court.  But it avers that the order was made without just or probable cause, tyrannically, oppressively, maliciously, corruptly, &c.

If the authority and jurisdiction of a court be once admitted in any case, it were a preposterous proposition to offer evidence to a jury as to its motives.  Chaos would come again, if the judgment of a court could be impeached, and its validity tried before a jury in a collateral action on an issue as to the motives of the judge in entering the judgment.

We therefore dismiss the first count of the plaintiff's declaration, and the offers of evidence to sustain it, as not requiring any further examination.

But the second count, as we have seen, does deny the jurisdiction of the judge to make the order, and also charges that it was made from malicious and corrupt motives, and without good grounds or probable cause thereof.

Before leaving the declaration, it is well that we should ascertain what the plaintiff himself has admitted, on its face, as to the facts in the case.   First, he admits that the order was made and entered of record on the 10th day of August, 1867, by the judge under color of office, but in the presence of the plaintiff, for he says it was so entered and made "without the leave or license and against the will and objection of the plaintiff."

In proceeding further to charge the falsehood of the statement of facts contained in the order in question, the plain-

tiff says: "And he avers that there was no complaint made by him to the said justice, and he did not accost him on the day and year aforesaid while the court was in session, nor immediately on the court's taking recess, and as the presiding judge was descending from the bench, as falsely stated in the said order; nor did he (the plaintiff) at the time and place aforesaid (being the same time and place mentioned in said order) address the said justice at all after the said court had taken the said recess until the said judge had passed some time in a private room, and had left the same and gone out of the court house, and the great body of auditors, jurors, witnesses, clerks and officers of the court, and the jury impanneled and the prisoner on trial had left the court house; and so he says the said judge willfully, maliciously, corruptly and unlawfully fabricated the said order to give color and pretence to his jurisdiction in the premises."

Here is not a syllable to deny one of the facts stated in the order in question as to its substance and effect, but only a denial of its accidents and circumstances; the exact moment of time, and that it was immediately after taking the recess that the difficulty occurred.

There is no denial that the fact of the offense as stated by the judge did occur, but a denial only that it occurred after the judge had gone out of the court house and then returned.

We are compelled to interpret such a denial as this as amounting to a pregnant admission of the substantial truth of the facts stated in the judge's order. But yet out of this seeming denial but real confession of the facts, the plaintiff's declaration proceeds to aver as follows as to the motives of the judge: "And so," he says, "the said judge willfully, maliciously, corruptly and unlawfully fabricated the said order to give color and pretence to his jurisdiction in the premises." That is, he denies the immaterial circumstances attending the transaction, and then concludes with

7DC—4

the most extraordinary charge that the statement of facts which he himself has thus conceded to be true in substance was "willfully, maliciously, corruptly and unlawfully fabricated" by the judge.

Undoubtedly under the rules of pleading it was necessary in this case not merely to prove but to allege in the declaration that the act of the judge in making the order was done both without jurisdiction and from malicious motives or corruptly. Otherwise the plaintiff would have stated his case out of court. In our judgment that is the effect of this attempted traverse, which on examination we find to be only an acknowledgement of the charge contained in the judge's order. It is wholly immaterial whether the occurrence between the plaintiff and the judge took place within one minute or one hour after the court had adjourned, or whether it took place just after the court had adjourned, and as the judge was descending from the bench, or after the judge had gone into another room, remained a few minutes, then returned to his seat, and was descending from the bench the second time.

. A court may sometimes exceed its jurisdiction, but unless the excess of jurisdiction is both " palpable " and " malicious or corrupt " on the part of the judge, he is not liable to an action for damages in consequence of his judgment.

Questions of jurisdiction are always questions of law, and sometimes as difficult to decide as any other questions of law. In Randall *vs.* Brigham, 7 Wall., 523, a case decided at the last term of the Supreme Court of the United States, it was held that no judge of a court of general jurisdiction was liable to a private action for damages unless his act, in excess of jurisdiction, was an act of " palpable " usurpation, and was at the time "malicious or corrupt." Excess of jurisdiction alone does not render him liable. Even a palpable excess of jurisdiction will not render him liable ; but there must co-exist, for that purpose, both the palpable excess of jurisdiction and the evil motive on the part of the

judge, and even then the court says "perhaps" he may be liable.

The following is the language of the court on this point: "But responsible they are not to private parties in civil actions for their judicial acts, however injurious may be those acts, and however much they may deserve condemnation, unless, perhaps, where the acts are palpably in excess of the jurisdiction of the judge, and are done maliciously or corruptly."

In Taafe *vs.* Downs, 3 Moore's Privy Council R., 41, note, an authority referred to in the opinion of the court in Randall *vs.* Brigham, Mr. Justice Mayne said that no action of the kind was ever sustained, and, save one in London and one in Ireland, none was ever attempted.

It was necessary, therefore, in this case, to show to the court in the first place that Judge Fisher, in making the order in question, had palpably transcended his jurisdiction, but that was not a question to be decided by the jury, but a question of law to be decided by the court.

Had he succeeded in showing this palpable excess of jurisdiction on the part of the judge, he might have had the right to adduce witnesses to the jury, to prove the falsehood of the judge's statement, its malice, or the judge's corrupt motives, "perhaps." But as to the question of jurisdiction: The plaintiff says the court proceeded to make the order without having served him with previous notice, without a written charge filed, and a day and opportunity given him to meet the charge at a fair hearing in court.

In Randall *vs.* Brigham, 7 Wall., 540, the court says: "It is not necessary that proceedings against attorneys for malpractice or any unprofessional conduct should be founded upon formal allegations against them. * * * Such proceedings are often instituted from what the court learns of the conduct of the attorney—from its own observation. * * * Sometimes they are moved by third parties upon affidavit, and sometimes they are taken by the court upon its own motion."

The judge's own observation is sufficient to originate his jurisdiction in such case. It is more than that; it is sufficient to authorize whatever judgment he may pronounce. His own knowledge, so obtained, cannot be controverted by witnesses called to contradict what the judge knows, and as to which he is himself to decide. If he have doubts as to what he saw or heard, he will, of course, receive all the lights he can obtain. But as he may himself decide from his own observation, he may decline to receive the evidence of witnesses to contradict his own knowledge. Suppose the plaintiff in this case had been afforded the opportunity, and he had proved by an array of witnesses that the statement of facts contained in the order in question was "false from beginning to end," would that evidence put an end to the jurisdiction of the court to make the order? Is there any power competent to compel a judge to put faith in witnesses who, he knows from the testimony of his own senses, are mistaken or perjured? But after all, when we come to examine the offers of evidence in this case, made for the purpose of contradicting the record, we find they really amount to nothing more than to prove that the mere circumstances and accidents of the transaction were not exactly as they were represented to be in the judge's statement, according to the plaintiff's construction of it. Indeed, since the plaintiff's own denial, as set out in his declaration, is confined to these immaterial accidents of the case, he would have had no right to prove more than he had himself alleged in his declaration; or, in other words, to prove his own admission to be untrue.

Then as to the necessity of giving formal notice before making the order. In the People *vs.* Nevins, 1 Hill's N. Y. R., 154, the court says: " Attorneys, counsel and other officers of the court are in fiction and judgment of law always deemed not only to be within the jurisdiction of the court, but during term time present in court, and they are so expressly treated in pleading. They are always in term time

as much within the jurisdiction of the court as a prisoner within the custody of the sheriff or marshal. No process, therefore, against either is perhaps strictly necessary to bring them into court.

It is true, it is said both in Magna Charta and in the Constitution that no person shall be deprived of his life, liberty or property without due process of law. The word process generally means a writ or warrant, but it is not limited to that signification. Lord Coke in his commentary on this word (2 Inst., 51, 52), says: "This word comprehends all lawful warrant, authority or proceeding by which a man may be arrested." So that a man may be deprived of his liberty even without a writ or a warrant, if it|be by lawful authority or proceeding, as he shows by a number of examples afterwards. The question, therefore, recurs, and we are to look to the decisions and practice of the courts to be informed of the meaning of this word as applicable to a case like the present. The power of the courts to punish all persons in a summary manner for contempt of their authority is as old as the law. .

As to attorneys, who are officers of the court, and presumed to be always present in court in term time, and so immediately under its jurisdiction and control, not merely for contempts but for misconduct in their office of attorney, the jurisdiction of the courts cannot now be doubted. In such cases the summary proceeding is " due process of law."

In Secomb's Case, 19 How., 9, the relator complained that he had been stricken from the roll of attorneys in his absence and without notice.

Chief Justice Taney in pronouncing the opinion of the court, whilst very distinctly intimating dissatisfaction with the course pursued by the court in that instance, says: " The court, it seems, were of opinion that no notice was necessary, and proceeded without it, and, whether this decision was erroneous or not, yet it was made in the exercise of judicial authority, where the subject matter was within their juris-

diction, and it cannot, therefore, be revised and annulled in this form of procedure ; " and this ruling is referred to and approved in *Ex parte* Bradley, 7 Wallace R., 378. It is true that in Seacomb's Case the offense was committed in open court. But at the time, nor for several days afterwards, did the court take any cognizance in regard to it. So that when the order was made it was done solely upon the recollection of the facts in the mind of the judge in regard to a transaction of which there was no entry on the minutes of the court.

The mistake of the plaintiff is that he regards the act of a court in dismissing a member from the bar for misconduct as a criminal or *quasi* criminal proceeding, and the order as a personal punishment. But it is not so regarded by the law, else would the trial be a trial by jury, after indictment, and in a court of criminal jurisdiction only. It has been decided that suspension from the bar was not a punishment, but a mode of the court to get rid of an improper officer. Upon this ground the Court of King's Bench struck from its roll two attorneys, of whom one had been found guilty of a felony five years previously, but had been burnt in the hand and received the benefit of clergy, which operated as a statutory pardon, since which time his conduct had been good, and the other had been convicted of an attempt to extort money, but judgment had been arrested, and so he was never sentenced. See *Ex parte* Brounsell, Cowp. R., 829, and Rex *vs.* Southerton, 6 East., 143. In the first of these cases Lord Mansfield said : " This application is not in the nature of a second trial or a new punishment. But the question is whether, after the conduct of this man, it is proper that he should continue a member of a profession which should stand free from all suspicion."

In the latter case, although the attorney had escaped sentence, and so was to be regarded in the eye of the law as an innocent man, yet Lord Ellenborough, after he had

arrested the judgment in the case, said " that enough appeared to the court to satisfy them that the defendant was a very improper person to remain as an attorney on the rolls of the court. Thereupon he desired the master to inquire and report whether the defendant were still upon the roll of attorneys of this court." The name of the attorney was subsequently ordered to be stricken from the roll of attorneys. The author of Evans' Practice, page 33, says that he recollects a case in which an attorney was struck off the roll of the attorneys of Baltimore County Court for gross ignorance and stupidity. These qualities, though offensive wherever found, are not criminal.

But as to the present case, the declaration alleges that the order in question was made " unlawfully and without the leave or license and against the will and objection of the plaintiff."

We think this is an admission, on the record, that the plaintiff was present in court, and there made his objections to the order at the time, and before it was made and entered on the minutes, and that amounts to a constructive waiver of notice on his part.

Perhaps it had been better and more consistent with that order and dignity which befit a judicial tribunal if a rule had been laid in this case; but as to that we are not to decide. The indignity offered to a judge by an attorney may amount to such an enormity as to justify his instant dismissal. If the judge possess this power in any case that makes him the exclusive judge as to the proper occasion for its exercise in every case.

We are aware that in Randall vs. Brigham, 7 Wall., 540, the court say : " It is not necessary that proceedings against attorneys for malpractice or any unprofessional conduct should be founded upon formal allegations against them. Such proceedings are often instituted upon information developed in the progress of a cause or from what the court learns of the conduct of the attorney from its own observa-

·tion. Sometimes they are moved by third parties upon affidavit; and sometimes they are taken by the court upon its own motion. All :that is requisite to their validity is that when not taken for matters occurring in open court, in the presence of the judges, notice should be given to the attorney of the charges made and opportunity afforded him for explanation and defense. The manner in which the proceeding shall be conducted, so that it be without oppression or unfairness, is a matter of judicial regulation."

In laying down the foregoing propositions or rules for proceeding the attention of the court seems to have been attracted to two classes of cases only ; namely, first, where the offense was given in open court in the presence of the judges; and, second, where the offense or misconduct was committed out of court, and not in the presence of the judge

In the first the rule is laid down that no notice was necessary ; that is, where the offense was committed in open court, in the presence of the judges; but in the second— that is, where the offense was committed out of court, and not in the presence of the judges—" notice should be given to the attorney of the charges made, and opportunity afforded him for explanation and defense; " that is, that notice, &c., must be given where charges have been made. But when the court acts upon its own observation of the conduct of the attorney charges need not be made, and therefore jurisdiction in such case does not depend on previous notice. The case of the misconduct of an attorney towards a judge out of court, in reference to the course of the latter on the trial of a cause in court, seems not to have been considered by the Supreme Court in laying down the · foregoing rules, and in such case we are not informed by this decision whether the notice would be required. However.that may be, the fact appears on the face of the plaintiff's own declaration that at the time the order in question was made he was in court and objected to the order, and that we regard as a sufficient appearance in the matter, even if notice had been requisite in such a case.

Besides this, the decision in Randall vs. Brigham was not made till more than a year subsequent to the date of the order made by Judge Fisher; and we might well regard the point of law in question to have been at that time at least one of reasonable doubtfulness. In our judgment, therefore, so far as this point is concerned, said order was not such a "palpable" usurpation of jurisdiction as would render the judge liable to a civil action for making it.

Another ground on which the plaintiff assails the act of the judge in making the order in question is found in the Act of Congress of March 2, 1831, 4 Statutes at Large, 487, entitled "An Act declaratory of the law concerning contempts of court."

The first section declares, "That the power of the several courts of the United States to issue attachments and inflict summary punishments for contempts of court shall not be construed to extend to any cases except the misbehavior of any person or persons in the presence of the said courts or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said court in their official transactions, and the disobedience or resistance by any of the officers of the said courts, party, juror, witnesses, or any other person or persons to any lawful writ, process, order, rule, decree, or command of the said courts."

This act applies only to the courts of the United States, to contempt against said courts, and to the power to punish such contempt against said courts by attachment and summary punishment.

We are strongly inclined to the opinion that the Criminal Court of this District is not a court of the United States, as contemplated by this act; we are of opinion, also, that the offense of Mr. Bradley, as it is not charged to be a contempt of court in the order in question, was not a contempt of court, but only misconduct in his office of attorney; and the record shows that he was neither attached nor summarily punished for its commission.

The third article of the Constitution declares that "the judicial power of the United States shall be vested in one Supreme Court, and in such inferior courts as the Congress shall from time to time ordain and establish."

The first Congress under the Constitution began its first session on the 4th of March, 1789, and adjourned on the 29th of September following.

On the 24th of September it passed the act entitled "An Act to establish the judicial courts of the United States." The object of this law was to establish a judicial system for the United States, as contemplated and provided for by the Constitution in its third article. The courts established by this act were the Supreme Court, the Circuit Courts, and the District Courts of the United States, and that organization continues to the present day. These courts, therefore, were the "judicial courts of the United States," and there are none other belonging to that system. The seventeenth section of this act conferred upon these courts the "power to punish by fine and imprisonment, at the discretion of said courts, all contempts of authority in any cause or hearing before the same."

The Act of 1831 is entitled, "An Act declaratory of the law concerning contempts of court," and declares "that the power of the several courts of the United States to issue attachment," &c. What courts did Congress design to include in this designation, "The several courts of the United States?" Were they not such courts and such only as were created under authority of the third article of the Constitution, in which the judicial power of the United States was to be vested?

But it has been argued that the Criminal Court of this District is one of the several courts of the United States, because it was created by Congress and invested with powers which elsewhere have been conferred upon courts of the United States. The jurisdiction of the Criminal Court of this District is derived intermediately from the fifth section

of the Act of the 27th of February, 1802, 2 Statutes at Large, page 106, in these words: "That said court shall have cognizance of all crimes and offenses committed within said District." This is a jurisdiction vastly more comprehensive than that conferred by Congress upon any court of the United States. It is a jurisdiction which Congress has not the power, under the Constitution, to confer on any court, except a court in this District or in any one of the Territories. How then can the Criminal Court of this District be classed "as one of the several courts of the United States," referred to in the Act of 1831? The Criminal Court of this District does not, in our opinion, spring from the judicial power granted to Congress by the Constitution, but from the power granted to Congress in the Constitution to "Exercise exclusive legislation in all cases whatsoever over this District." Nor does it follow because said court is vested with powers and jurisdiction which are elsewhere vested in courts of the United States, that this makes it one of the several courts of the United States.

The courts of the Territories of the United States are the creatures of Congress, and are in like manner vested with a general jurisdiction as extensive as those of this District, but they are not on that account courts of the United States, as was decided in the case of the American Insurance Company *vs.* Canter, 1 Peters, 511.

There are several acts to be found amongst the Statutes of the United States conferring even on the State courts jurisdiction over cases concurrently with that of the courts of the United States, one of which was the Act of March 8, 1808, 2 Statutes at Large, 354, entitled "An Act to extend jurisdiction in certain cases to State judges and State courts," but it has never been supposed by any one that this had the effect to bring such State courts within the class comprising the several courts of the United States.

By the sixth section of the Act of April 29, 1802, 2 Statutes at Large, 159, the judges of any circuit court are

authorized to certify their division of opinion on any point on trial before them to the Supreme Court of the United States for decision. But in Rose vs. Triplett, 3 Wheat. R., 600, the Supreme Court of the United States decided that this was a power which did not belong to the Circuit Court of the District of Columbia, because it was not a circuit court of the United States.

And we think these views are by no means in conflict with the decision of the Supreme Court in Cohen vs. The State of Virginia, 6 Wheat., 126, where it was decided that, in legislating for the District of Columbia, Congress was acting in its national capacity, and not in that of a municipal lawmaker for the District.

But if the Act of 1831 be applicable to the courts of this District, we are of opinion that it does not apply to the case in question. That act was passed to restrain the courts of the United States from issuing attachments, and inflicting summary punishments for contempts of court.

The offense of Mr. Bradley was not a contempt of court, nor was he attached or summarily punished for its commission. His offense was towards a judge of the court, out of court, consisting chiefly of threats of personal chastisement for his conduct during a trial then pending, in which the present plaintiff was concerned as counsel on one side.

For this act of gross impropriety and violation of his duty as an officer, bound by his oath to be faithful as well to the court as to his client, his name was ordered to be stricken from the roll of attorneys.

The opinion of the Supreme Court of Pennsylvania in Austin's Case, 5 Rawle, 204, delivered by Chief Justice Gibson is directly in point. He says: "But it is nevertheless evident that professional fidelity may be violated by acts which fall without the line of professional functions, and which may have been performed without the pale of the court. Such would be the consequence of beating or insulting a judge in the street for a judgment in court,   *   *   *

and an enormity of that sort practiced on but a single judge would be an offense, as well against the court, which is bound to protect all its members, as if it had been repeated in the person of each of them, because the consequence to suitors and the public would be the same; and whatever may be thought in such a case of the power to punish for contempt, there can be no doubt of the existence of a power to strike the offending attorney from the roll."

If we were to concede, therefore, that the Act of 1831 was in force as to the courts of this District, we find in it nothing to prohibit the jurisdiction assumed by the Criminal Court in making the order in question.

But one other point upon this record remains for consideration. It is this: That the trial of Surratt having been entered upon, but not finished during the March term of the court, the law authorized the court to prolong the trial into the June term, but prohibited the court from transacting any other judicial business except merely to bring that trial to a close, and that the order to strike the name of Mr. Bradley from the roll of attorneys was therefore void.

The Act of Congress of February 16, 1853, is in these words:

"Be it enacted, etc., That where, at any term of the Circuit or Criminal Court of the District of Columbia, a jury shall be impanneled to try any cause, or any issue, or issues joined in any cause, and it shall happen that no verdict shall be found, nor the jury otherwise discharged before the day appointed by law for the commencement of the next succeeding term, the court shall, and may nevertheless, proceed with the trial by the same jury in every respect as if such term had not commenced; and all subsequent proceedings to final judgment, if such judgment shall be rendered, shall be entered and have legal effect and operation as of the term at which the jury shall have been

impanneled, any law or usage to the contrary notwithstanding."

The jury in the Surratt Case was impanneled in the March Term and not discharged till the 10th of August, 1867. In the meantime the June Term intervened, and its sessions were postponed from time to time during the progress of the trial of Surratt.

The order in question was made and entered on the minutes of the court on the 10th of August, immediately following the entry of the order for the discharge of the jury in that case, and immediately thereafter follows the order of the court adjourning till term in course.

The plaintiff in this case argues that according to the Act of 1853 the court lost its powers for any act whatsoever on the instant the order was made for the discharge of the jury in the Surratt Case.

If that were so, then it had no power even to order an adjournment; but the act provides that the trial might proceed in such case in every respect as if the intervening term had not commenced.

Now, no cause can be said to be beyond the jurisdiction of the court to amend or alter its minutes till after the court has adjourned. Until the last moment of the term, the proceedings are only the minutes of the court and not records. Coke (Co. Litt., B. 3, Ch. 358 a) says: " Of courts of record you may read in my reports, but yet during the term, wherein any judicial act is done, the record remaineth in the breast of the judges of the court and in their remembrance, and therefore the roll is alterable during that term as the judges shall direct; but when the term is past, then the record is in the roll, and admitteth no alteration, averment or proof to the contrary."

In contemplation of law, therefore, the trial of Surratt was not ended till the adjournment of the court, and the adjournment of the court was necessary to bring it to an end.

The order in question, therefore, was made during the sitting of the court on that trial, and as the offense given as a reason for the order related to the course of the judge during that trial, the order is to be regarded as one of its incidents.

In Brown's Practice, 132, citing Stephens *vs.* Hill, 10 M. & W., 28–30, and Simm *vs.* Gibbs, 6 Dowl., 310, it is said: "The affidavit in support of the motion for striking an attorney off the roll for misconduct during the proceeding in a cause should be entitled in the cause, and is properly entitled even when judgment has been obtained therein, for the cause is not, on that account, out of court."

We find, therefore, that for none of these reasons was the order complained of beyond the authority of the court to make it.

But if our judgment should be wrong in any of these respects, we think no court could say that "the making of the order amounted to a palpable excess of jurisdiction," for doing which a judge might, *perhaps* be amenable to a civil action for damages; provided, at the same time, his motives were malicious or corrupt.

*For these reasons the judgment of the Circuit Court must be affirmed.*