# In re ETTA H. MADDOX.

*Attorneys at Law—Women Not Entitled to Admission to the Bar Under
the Statutes of this State.*

The right to practice law, as an attorney and counsellor, is not a natural in-
herent right of every citizen but depends upon, and may constitution-
ally be regulated by statute.

In the Act of 1898, ch. 139, regulating admissions to the bar, the phrase-
ology plainly shows that only male citizens of the State are contem-
plated. Code, Art. 1, containing certain general rules of interpreta-
tion, provides that "the masculine includes all genders except where
such construction would be absurd or unreasonable." At common law
no woman could practice as an attorney, solicitor or barrister. *Held,*

1st. That women are not entitled, merely in consequence of this general
rule of interpretation, to be admitted to the bar when the statute on the
subject shows that a contrary purpose was held by the Legislature.

2nd. That the provision in the Act of 1898, relating to the admission of
lawyers from other States does not authorize the admission of a woman
lawyer from another State, but relates only to such persons as are en-
titled to admission under the laws of this State.

Petition of Etta H. Maddox by her attorney *Howard Bry-
ant,* for an order directing her to be admitted to practice law
if certified to be qualified by the State Board of Law Exam-
iners.

McSHERRY, C. J., delivered the opinion of the Court.

Miss Etta H. Maddox has made application for admission to
the bar. In support of her application she has filed quite an
elaborate brief. She is a female over twenty-one years of age
and is a graduate of one of the law schools of Baltimore. As
we understand her position there are two grounds upon which
she relies to sustain her contention that she is entitled to be
admitted to the bar. And these two grounds are, *first,* that
the right to practice law is a natural right, inherently pos-
sessed by every one alike, without regard to sex, and, there-
fore, dependent in no way upon legislative authorization ; and,
*secondly,* that if the Legislature has the power to prescribe

who shall and who shall not be admitted to practice law, the applicant, though a female, is within the terms of the Maryland statute and entitled to admission under it. These positions are essentially conflicting and must be treated as alternative propositions, and therefore both must be considered.

That there is no such thing as a natural inherent right in any individual to practice law we regard as conclusively settled by the case of *Charles Taylor*, 48 Md. 28, even if it were doubtful on principle. In that case Charles Taylor, a negro, made application in 1877 for admission to the bar of this State. At that time the Code provided that such applications might be made by any "free white male citizen of Maryland above the age of twenty-one years." It was contended that though the Legislature had in express terms declared that *white* male citizens were entitled to practice law, the applicant, who was a male citizen, but not a *white* male citizen, was still entitled, because the provision of the Code was repugnant to the Fourteenth Amendment to the Federal Constitution ; and that the repugnancy consisted in the inequality which was created by the exclusion of the negro race as a class from the right to practice law. This Court, speaking through the late CHIEF JUDGE BARTOL, in the course of its judgment denying the claim of the applicant, said : " The privilege of admission to the office of an attorney cannot be said to be a right or immunity belonging to the citizen, but is governed and regulated by the Legislature, who may prescribe the qualifications required *and designate the class of persons who may be admitted.*" And the Court then proceeded to quote with approval the following extract from the separate opinion of MR. JUSTICE BRADLEY in *Bradwell's case*, 16 Wall. 142: " In the nature of things, it is not every citizen of every age, sex and condition that is qualified for every calling and position. It is the prerogative of the Legislature to prescribe regulations founded on nature, reason and experience, for the due admission of qualified persons to professions and callings demanding special skill and confidence. This fairly belongs to the police power of the State." These observations were made in a case which

involved the right of a female to practice law in the State of Illinois. In the course of his argument in behalf of Mrs. Bradwell in that case the late Mr. Matt H. Carpenter, after citing several decisions, said: "From these cases the conclusion is irresistible that the profession of the law, like the clerical profession and that of medicine, is an avocation open to every citizen of the United States. And while the Legislature may prescribe qualifications for entering upon this pursuit, it cannot, under the guise of fixing qualifications, exclude a class of citizens from admission to the bar. The Legislature may say at what age candidates shall be admitted; may elevate or depress the standard of learning required. But a qualification to which a whole class of citizens can never attain is not a regulation of admission to the bar, but is, as to such citizens, a prohibition." The application of Mrs. Bradwell had been denied by the Supreme Court of the State on the ground that the applicant was a woman, *55 Ill. 535;* and upon writ of error the Supreme Court of the United States distinctly repudiated the contention that the Fourteenth Amendment abridged the right of the States to prescribe by statutes who should be admitted to practice law, and thus, of necessity, rejected the theory that the right to practice law was a right existing independently of statute.

Now, as to the second alternative. Prior to 1898 the Code provided, as amended by the *Act of 1892, ch. 37,* that "any male citizen of Maryland" possessing the qualifications therein mentioned might be admitted to practice law. *Code, Art. 10, sec. 3.* In 1898 *section 3* and other sections of the same article were amended. As amended *section 3* enacts that "all applications for admission to the bar shall be referred by the Court of Appeals to the State Board of Law Examiners, who shall examine the applicant touching *his* qualifications for admission to the bar. * * * If the Court of Appeals shall find the applicant to be qualified to discharge the duties of an attorney, and to be of good moral character and worthy to be admitted, they shall pass an order admitting *him.* * * * Every applicant upon presenting *himself* for

examination before the Board of Law Examiners " is required to pay a certain fee; and it is further declared in the same section that " any fraudulent act or representation by an applicant in connection with *his* application or examination shall be sufficient cause for the revocation of the order admitting *him* to practice." *Act of 1898, ch. 139.* A perusal of this *Act of 1898* will show that the main, indeed the only purpose which the Legislature had in view when it adopted the statute was to change the method of admitting applicants to the bar, and that there was no design to enlarge the class of persons entitled to admission. It is obvious, we think, that under the Code as it stood prior to the adoption of the *Act of 1898* the present applicant, not being a *male* citizen would have been ineligible, unless the rule of interpretation which declares that " the masculine includes all genders, except where such construction would be absurd or unreasonable " (*Code, Art. 1, sec. 6*), would have brought her within the class of persons entitled to be admitted. Under the phraseology of the *Act of 1898*, which deals alone with the masculine gender, the applicant is likewise excluded unless the same rule of interpretation includes her. So, whether dealing with the original or amended provision on this subject we confront this general rule of interpretation. It must be noted that the rule whilst general is, by its own terms, not without exceptions. It was couched in general terms because it was intended to be applicable throughout the Code to all subjects therein dealt with, except when its application to some of those subjects would be absurd or unreasonable. If this rule of interpretation does not make the statute declare precisely the reverse of what the words of the statute say, then there is no legislative provision under which the applicant can claim that she is entitled to practice law. And if there is no such legislative provision this Court is powerless to admit her. We cannot enact legislation. We are restricted to an interpretation of that which has been adopted by the General Assembly.

Has the rule of interpretation contained in *sec. 6, Art. 1 of the Code* any application to the subject-matter before us?

By the common law, to which under *Art. 5* of the Declaration of Rights, the inhabitants of Maryland are entitled, no woman could, in person, take an official part in the government of the State, except as Queen or Overseer of the Poor, without express authority of a statute. Though an attorney at law is not in the widest sense of the term a public officer he is an officer and is required to take an oath of office which has remained without substantial modifications since the time of Lord Holt. In England no instance is known in which a woman was admitted to practice as an attorney, solicitor or barrister. *Robinson's case*, 131 Mass. 376. The rules of the common law and the usages of Westminster Hall from time immemorial excluded women from practicing as attorneys; and those rules, if not those usages, were engrafted on our own jurisprudence more than a century and a quarter ago, and are a part of that system today unless changed by positive legislation. When we come, then, to interpret statutes which relate to subjects covered by the common law we must read them in the light which we derive from the common law, and we are not to construe them as overriding, by implication, long established and firmly fixed principles which have been adopted or borrowed by us from that source. Statutes in derogation of the common law are to be strictly construed. *Greenwood* v. *Greenwood*, 28 Md. 369. It would be in the highest sense unreasonable to hold that the words *male* citizen as used in the Code prior to the passage of the *Act of 1898*, meant also *female* citizen, under the rule of interpretation which declares that the masculine shall include all genders; and it would be unreasonable to so hold because such a construction would by mere implication and not by positive enactment abrogate the common-law doctrine that a female is not eligible to be an attorney at law. When it is remembered that the object of the *Act of 1898* was, not to enlarge the class of persons entitled to practice law, but to prescribe a different method for the admission of the previously existing class, it would be equally unreasonable to ascribe to the word *he* as used in that Act, a meaning which includes a female, ·

because by doing so the policy, the principle and the practice of the common law actually appropriated by us as a part of our system of judicature, would be subverted and revolutionized by a mere conjectural inference. To abrogate a long standing and heretofore uninvaded and unquestioned doctrine of the common law merely because a rule of interpretation, adopted more from a superabundance of caution or as a matter of convenience than from any real necessity, declares that the masculine shall include all genders, would attribute to the Legislature an intention which we find nothing to indicate ever existed. It may be safe to say that in by far the great majority of instances outside of the construction of penal statutes, precisely the same rule of interpretation in construing the Code would have prevailed though the Legislature had not declared that the masculine should include all genders. And it would have prevailed independently of the adoption of this prescribed rule of interpretation, because of the familiar doctrine that whatever is within the intent and purpose of a statute though not within its words, is none the less within the statute. *State* v. *Boyd*, 2 G. & J. 365. We find nothing to indicate that the Legislature in adopting from mere precaution or convenience a rule of interpretation which could have been invoked in most instances though not thus adopted, intended thereby to radically change the rule of the common law in respect to the ineligibility of females to practice law. This conclusion is not without ample authority to sustain it. Thus in *re Goodell*, 39 Wis. 232, it was held that the Wisconsin statute providing for the admission of attorneys and in which it was declared that *he* shall first be licensed, did not include women although a general statutory rule of construction prescribed that words of the masculine gender may be applied to females. Subsequently the statute was amended so as to include women. *Re Goodell*, 48 Wis. 693. So in *Robinson's case*, 131 Mass. 376, it was held that the rule declaring that words importing the masculine gender may be applied to females unless repugnant to the context of the same statute or inconsistent with the manifest intent of the Legisla-

ture, did not authorize the admission of women under a statute providing for the admission of citizens of the State. Afterwards the statute was amended so as to include women. *Act of April 10, 1882.* And in *re Stoneman,* reported in note to *53 Am. Rep. 323,* it was held by the General Term of the Supreme Court of New York that a woman was not entitled to admission to the bar under a code provision prescribing rules for the admission of "a male citizen," although the word "male" had been omitted from the clause of the Constitution on the same subject. In *re Bradwell,* 55 Ill. 535, it was held that the rule under which females were included in words importing the masculine gender did not authorize the admission of women to practice law. Since that decision the statute has been changed. In *Lockwood* v. *United States,* 9 Ct. Claims, 346, it was decided that the rule of the Court by the terms of which no one could practice unless he is a man of good character could not be construed to mean a female though the statute *16 Stat. at L., p. 431,* provided that words importing the masculine gender might be applied to females unless the context showed that such words were intended to be used in a more limited sense. The law has since been changed by Act of Congress of February 15th, 1879. All these cases are to be found in the notes to *re Leach,* 21 L. R. A. 701.

We have been referred to many cases wherein a different view has been taken by other Courts. We cannot undertake to discuss all of these cases. We will examine but one of them, viz. *Re Leach,* 134 Indiana, 665; s. c. 21 L. R. A. 701. In Indiana the statute declared that certain persons "being voters" could become members of the bar, yet the Court held that women though not voters could be admitted to practice law, because they were not *excluded* by the statute. In other words though the persons who were entitled to admission to the bar were defined, other and different persons not within the definition could also be admitted if not in terms excluded. Precisely the reverse of this is the correct method of reasoning. It is, as we have shown, within the power of

the Legislature to say who may be admitted to the bar. When the Legislature does say who may be admitted to the bar, it of necessity excludes all persons who do not come within the designated class. Take the Code of this State as it stood before the adoption of the *Act of 1898.* It declared that *male* citizens of the State were eligible. According to the peculiar reasoning of the Indiana case, though the statute distinctly confined the right of admission to male citizens, women could have been admitted, because they were not excluded by an express prohibition. The doctrine is that under a statute applicable to a particular class, everybody else though actually outside the class is included within the class, because not specifically excluded from the class. This is obviously fallacious. The fallacy lies not only in assuming that all persons other than those described by the Legislature have the right to practice law, but in deciding that a designation of a particular class does not of itself necessarily exclude every person not within the class. This fallacious theory of interpretation would, if adopted, enable you to read the former statute as meaning not only what it said, but at the same time as meaning precisely the opposite of what it did say, because that opposite reading though not included in the words actually used was not excluded by restrictive words not used. Upon the same theory women would be eligible to serve on juries. The statute requires that jurors shall be chosen from amongst persons whose names appear on the poll-books or on the tax-books. A woman's name may be on the tax-books and whilst the statute throughout uses the masculine gender in referring to jurors, a woman would be included thereunder and therefore eligible, because there are no words declaring that she shall be ineligible.

But it is said that under *sec. 6 of the Act of 1898,* members of the bar from other States may become on certain named conditions members of the bar of this State after actually residing in Maryland; and it is contended that under this provision a female who had been admitted to practice law in some other State could locate in this State and be admitted.

And so it is insisted that though our statutes uses the masculine gender it would not prevent a female lawyer who had been admitted in some other State from locating in Maryland or from being admitted to the bar here after acquiring a residence in this State. The inference deduced from this assumption is that notwithstanding the use of the masculine gender a woman can be lawfully admitted to the bar. This begs the whole question. If a female cannot be admitted to the bar in Maryland under the statute now in force, then though she had been admitted in some other State she cannot by reason or as a consequence of that fact be admitted here. The whole statute must be taken together. Inasmuch as the class of persons for whose admission it provides does not include females, the sixth section, which has relation to the admission of lawyers from other States, must be read as not including females either. Hence, when that section provides for the admission of lawyers from other States, it means such lawyers as are entitled to admission under our law. The purpose of the sixth section was not to permit persons from other States to practice here, if the same persons would, when applying as residents for admission, be ineligible. The whole design of the section was to allow such persons as had been admitted in other States and had then located here, to be admitted without undergoing an examination, if eligible for admission under our own law ; but it was never intended to enlarge the class of persons who could be admitted, or to make an exception in favor of a lawyer coming from another State. In accordance with this view it has been held that a woman having a certificate of admission as an attorney from another State was not thereby entitled to admission in Oregon. *Re Leonard*, 12 Or. 93.

We are not to be understood as disparaging the laudable ambition of females to become lawyers. It is for the General Assembly to declare what class of persons shall be admitted to the bar. We have no power to enact legislation. The Courts can only interpret what the Legislature adopts. If we should say that females are entitled to be admitted to the bar, when the Legislature has not said so, we would exceed our

authority and usurp the functions of a different and an independent department of the State Government. If the General Assemby thinks, at its approaching session, that females ought to be admitted to the bar it can so declare. Until then we have no power to admit the applicant and her request to be allowed to stand for examination must be denied.

(Decided November 21st, 1901.)