**BROOKS v. LAWS et al.**
Misc. No. 310.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 10, 1952.

Decided June 26, 1953.

Petition for Rehearing Denied
Dec. 23, 1953.

Mr. Homer Brooks, petitioner, pro se.

Asst. Atty. Gen. Holmes Baldridge pro hac vice, by special leave of Court, for respondents.

Mr. Edward H. Hickey, Atty., Dept. of Justice, Washington, D. C., also entered an appearance for respondents.

Before STEPHENS, Chief Judge, and EDGERTON and PRETTYMAN, Circuit Judges.

PRETTYMAN, Circuit Judge.

The matter before us is a motion filed by Homer Brooks asking our leave to file in this court a complaint. In the proffered complaint he would pray for an order directed to the Chief Judge and the Associate Judges of the United States District Court for the District of Columbia. The order thus sought would require the District Court to accept and file a notice of appeal which Brooks sought to lodge from an "order" (actually in form a letter) alleged to have been

entered by that court on October 11, 1951. So the matter before us is in effect a request for our permission to bring an action for *mandamus*.[1]

The facts, both procedural and substantive, as they are presented in the papers before us, are in such volume and detail as to be complicated. We treat the two kinds of facts separately.

*Procedural facts.* On or about March 4, 1948, Brooks filed with the District Court, for the attention of the Secretary of its Committee on Admissions and Grievances, an application for admission, upon motion, to the bar of that court. He executed and filed the questionnaire and affidavit required of an applicant. The Committee gave Brooks a hearing on April 23, 1948, and denied the application. Thereafter, on November 5, 1949, Brooks wrote the Chief Judge of the District Court a letter, asserting his right to be admitted to the bar, and on April 20, 1950, applied to the Committee for reconsideration of his application. On April 28, 1950, the Committee upon reconsideration and additional data again rejected the application. On May 24, 1950, the Chief Judge wrote Brooks that the judges of the District Court had concluded that the Committee should be sustained.

On August 30, 1951, a year and three months later, Brooks filed in the District Court a motion which sought (1) reconsideration of his application for admission, (2) consideration of new information, and (3) an order admitting him to the bar. On October 9, 1951, he filed with the District Court an application for an order granting his motion (that of August 30, 1951).

On October 11, 1951, the Chief Judge wrote Brooks that the District Judges had considered his application in executive session and that the action of the court was to sustain the Committee.

On November 2, 1951, Brooks handed to the Clerk's Office of the District Court a notice of appeal from the "order" of October 11, 1951. Thereafter one of the carbon copies of that notice was returned to him with the following notation:

"The Court being of opinion that its action in denying the application of Homer Brooks for admission to the bar was taken pursuant to its administrative powers and is not appealable, the right to file this notice of appeal is denied. [Signed] Bolitha J. Laws, Chief Judge."

Thereupon, on November 6, 1951, Brooks filed in this court the motion now before us, naming himself as plaintiff and the Chief Judge and Associate Judges of the District Court as defendants. Attached to the motion is the proffered complaint. The defendant judges filed a motion to dismiss Brooks's motion. Attached to their motion were a number of exhibits. Both motions were set for oral argument and were heard.

*Substantive facts.* In his questionnaire and affidavit Brooks stated that he was born in Evergreen, Alabama; that his only residences had been in Evergreen, Birmingham, and Washington, D. C.; that he had not attended college; that he had an LL.B. degree from LaSalle, Chicago, having taken special courses at Birmingham; and that he had had "No actual private practice alone—since admitted to bar." In response to an instruction to "Make a complete statement of your practice of the law", Brooks wrote that he had assisted William G. Black, Esquire, of Birmingham, in research "in spare time—and gratis" and that he had been in "Government practice" on the legal staff of the Office of Inter-American Affairs and the Department of State, which Government service he dated as from April 1, 1945, to March 15, 1947 (23½ months). At another point on the questionnaire and in a letter which accompanied, or preceded, it, he made reference to work in the Claims Division of the General Accounting Office from October 1, 1942, to April 1, 1945, but it is not

---

1. Whatever the merit or demerit of this seemingly strange procedure, it is permitted by custom in this jurisdiction.

clear that by those references he was claiming that work as the practice of the law. On the questionnaire he stated that from December 1, 1926, to October 1, 1942, he was employed by the Southeastern Express Company and its successor, the Railway Express Agency, at Birmingham, as a clerk and "in different capacities". He stated that he had been admitted to the Mississippi Bar March 2, 1942, to the United States District Court for the Southern District of Mississippi and the Mississippi State Supreme Court in March, 1945, and to the United States Court of Appeals for the Fifth Circuit in 1946. He made no entry on either of the two items of the questionnaire which called for statements of "every application presented and examination taken by you for a license granted by the state or an official position, the procurement of which required proof of good character" and "every application for admission to the bar made by you EXCEPT those covered by your answers to question 9" (which answers were those relating to admission in Mississippi, etc.). In answer to the question "Have you ever been a party to or had or claimed any interest in any civil proceeding?", he wrote "No." On the questionnaire he said: "Due to coming with the Federal Government in 1942 immediately after passing the bar. I was not in a position to begin practice. but If [*sic*] I had not accepted the position here I would have actually been in private practice. I deem the Government practice equivalent to such actual practice in Mississippi. The State of Mississippi grants the privilege of reciprocity." Attached to the questionnaire were a certificate of the Board of Bar Admissions of Mississippi dated March 2, 1942, stating that Brooks was "in all things duly qualified" to practice law in all courts of the State; certificates of the clerks of the courts to which he had been admitted; a copy of his degree from LaSalle Extension University; and the certificate of its Dean, with Brooks's marks in his law courses.

In his "Motion for Reconsideration" Brooks said that he claimed credit for seven months of private practice from March 2, 1942, to October 1, 1942, and he also attached evidence as to his legal duties in his position as clerk to the Chief Judge of the Municipal Court for the District of Columbia. He also then stated that he was a member of the bar of the Supreme Court of the United States, of this court, and of the United States Emergency Court of Appeals. Attached to that motion was an affidavit of Brooks, in which he described his claimed private practice as follows:

" * * * that from the date of his admission, he was in said Court [the Circuit Court of Lauderdale County, Mississippi] several times per month, and although he was ready, able and willing to take Court appointed cases, Civil or Criminal, indigent or otherwise, he did not maintain a law office, but was before the Court and holding himself out as an attorney in the practice of law, the same as some attorneys in the District of Columbia who are before the Courts daily and handle cases when appointed by the Court, but who do not maintain an office; that he did converse with the said Judge Busby on some cases but did not actually handle any case * * *."

Also attached to Brooks's motion was an affidavit by him, stating that since October 4, 1948, he had been Court Clerk to the Chief Judge of the Municipal Court and describing his duties as such. In a statement filed at the same time the position is described as "Clerk of the Court" for the Chief Judge.

In papers filed in this proceeding by respondents it is shown that Brooks filed thirteen applications for admission to the Alabama bar and took the examination eight times but did not pass it; that in 1941 Brooks brought a suit for declaratory judgment in the Circuit Court of Jefferson County, Alabama, praying for decision as to whether he must comply with certain revised rules as to admission to that bar; and that the suit was dismissed on a plea of *res judicata*.

It is obvious that Brooks failed, in the papers he filed with the District Court, to show that he was entitled to admission to the bar of that court under its rules governing the admission of members of the bar of other jurisdictions upon motion without examination. The requirement of the rule is that the applicant must have "practiced law for five years".[2] The assistance Brooks said he gave William G. Black, Esquire, of Birmingham, could not have been the practice of law, because Brooks was never admitted to the Alabama Bar. His claim for "Government practice" in the Office of Inter-American Affairs and the State Department was for only 23½ months. His work as a claims examiner in the General Accounting Office was from October 1, 1942, to April 1, 1945, thirty months. The total time in the Federal Government is thus less than the required five years. Moreover there is nothing in the papers to show that the work in the General Accounting Office was the practice of law; indeed Brooks said his position there came from an examination for an "Express Clerk", although he accepted a position as a claims examiner.

In his motion for reconsideration of his application Brooks claimed that he practiced law in Mississippi and that he practices law as a clerk to the Municipal Court. As to Mississippi he showed that he had no office and never had a case, either by private engagement or by court appointment, and moreover that he did not live in Mississippi but in Alabama during that period. As a matter of fact, in the original application and the accompanying letter, Brooks took the position that his acceptance of federal employment prevented his entering private practice. He there said specifically, "I did not immediately begin the practice of law," and "I believe that due to these two points which kept me from private practice". Also pertinent in this respect is the long paragraph beginning with "Due to coming with the Federal Government * * *" which we have heretofore quoted from the questionnaire.

Brooks claims that the work he did as clerk to the Municipal Court, or clerk to the Chief Judge of that court, was the practice of law. If that work was practice, it was practice in that court. But Brooks was neither admitted nor entitled to admission there. In the first place Rule 79 of the Civil Rules of the Municipal Court provides that "Neither the clerk nor his assistants, nor anyone serving as a law clerk or secretary to a judge of this court, or employed in any other capacity under this court, shall engage in the practice of law while continuing in such position." In the second place Civil Rule 75 of that court is that its bar shall consist of persons who are members of the bar of the United States District Court for the District of Columbia and who have taken a prescribed oath, signed the roll, and paid a fee. The denial of Brooks's admission to the District Court bar is the subject of the present controversy. He could not have been practicing in the Municipal Court.

■  In sum, upon the face of the papers, none of the claims which Brooks made, with the possible exception of the 23½ months on the legal staff at the State Department, described the practice of law. He was not qualified under the rule upon his application.

Furthermore, the facts in this case place the matter squarely within the discretion of the District Court under the rule in Carver v. Clephane.[3] Brooks's failure to show his experiences in seeking admission to the bar of Alabama, even to the extent of bringing at least two court actions there in respect to that admission, brings his case not only within the rule laid down in the Carver case but within the factual situation upon which that decision rested. Upon the uncontroverted facts shown in the papers before the Committee and the District

2. Rules of the United States District Court for the District of Columbia, Rule 93(g).

3. 1943, 78 U.S.App.D.C. 91, 137 F.2d 685.

Court in the present case, Brooks was not qualified for admission under the rule in the Carver case.

■ The petition before us prays for an order in the nature of a writ of *mandamus*. As we and many other courts have often said, such a petition is addressed to our sound judicial discretion. In so far as we have such discretion in this matter, we decline to exercise it in favor of this petitioner for reasons apparent upon the face of the foregoing discussion.

Thus there is in Brooks's claim to a right of appeal in the present case merely a shell, without substance, a pure technicality. Nevertheless we consider it, because, if Brooks has an absolute right to appeal regardless of clear lack of substance in his claims, we may have no discretion to deny *mandamus*; and, even if we have a measure of discretion, denial of a writ sought in protection of an absolute right might well be an abuse of that discretion.

■ The question is whether rejection by the District Court of an application for admission to its bar is a decision within the meaning of Section 1291 of Title 28 of the United States Code. Only final "decisions" are appealable as of right under this section. "Decisions" means judicial decisions.

■ We hold that the action of the District Court in denying an application for admission to its bar upon an evaluation of the qualifications of the applicant under its rules is not appealable. Such action is "a ministerial act which is performed by virtue of the judicial power * * * rather than a judicial proceeding." [4] By "ministerial act" in the quoted clause the Supreme Court meant, and we here mean, an administrative act under judicial authority, not a mere clerical or non-discretionary act.

Brooks's application and motion for reconsideration, with their accompanying exhibits, were the only documents before the District Court for consideration. They contained Brooks's assertions of his qualifications for admission. They called for an evaluation by that court of those qualifications under the rules. All the data was upon the face of the papers. The court reached and announced its conclusion as to his qualifications. To hold that conclusion appealable would be to hold that this court would assume the burden of evaluating qualifications for admission to the bar of the District Court. Quite pointedly Congress did not intend us to do that. It has not, as have the legislatures of many states, placed in the appellate court the initial responsibility for admission to the bar of the jurisdiction. It placed that responsibility on the District Court, our trial court of general jurisdiction.[5] We give no examinations. We admit on motion members of the bar of the District Court, as we do members of the bars of the highest courts of the states, the federal circuits, and the Supreme Court. As a matter of fact Brooks is a member of the bar of our court by virtue of his admission to the Supreme Court of Mississippi. The question before us is our power to review the action of the District Court in respect to qualifications for membership in its own bar, a matter confided by Congress to it.

In this jurisdiction it is settled by the statutes that application for admission to the bar is not a "cause". The 1901 Code [6] gave the general term of the Supreme Court of the District of Columbia (now the District Court) certain specified powers, including the power to admit persons to the bar of that court. The general term consists of not less than three judges. That same statute provided in the same sentence that "said court shall not hear any cause in general term" and again, in the next section, "All causes in said court shall be heard and determined in special term." Thus,

4. In re Summers, 1949, 325 U.S. 561, 566, 65 S.Ct. 1307, 89 L.Ed. 1795.

5. 41 Stat. 561 (1920), D.C.Code § 11-1301 (1951).

6. Act of March 3, 1901, § 65, 31 Stat. 1189, 1200.

on the face of the statute, an admission to the bar is not a "cause".

It may be said that upon the foregoing reasoning a disbarment proceeding is not a "cause", because disbarment was dealt with in the same provision of the 1901 Code as was admission. But the statute since 1920 has specifically directed that in disbarment proceedings charges must be filed and a hearing had.[7] An order and judgment[8] is thereupon entered. Prior to 1920 it was once held[9] and again said[10] that the Circuit Court, predecessor to the District Court, had summary power to disbar, and we find in our reports no appeals in disbarment proceedings prior to 1920. After 1920 appeals could be had from such orders and judgments, because this court, prior to 1949, had jurisdiction over any final "order, judgment, or decree" of the District Court.[11] Even so, this court once observed[12] that the District Court, in denying effect to an explanation offered by a defendant in a disbarment proceeding, "exercised its judicial discretion, which is not subject to review in this Court." And the Supreme Court held in Ex parte Bradley[13] that an order disbarring an attorney was not reviewable under writ of error, "it not being a judgment in the sense of the law for which this writ will lie." However that may be, by virtue of special statutory provisions an order and judgment is entered in a disbarment proceeding.

But there are no special provisions in the statutes as to proceedings upon applications for admission. No order is entered by the District Court upon rejection of an application for admission; the court simply does not grant the application. No order was entered in the present case, as we have seen. Brooks simply received a letter from the Chief Judge in response to his letter. The utmost of our appellate jurisdiction applies to orders, and they must be final "decisions". There must be a cause before the court. It is clear, we think, that a mere application for admission to the bar does not constitute a cause.

While the statutory provisions above described in respect to admissions were stricken in 1949, when sections of the local Code were revised along with sections of Titles 18 and 28 of the United States Code,[14] the new statute provided that the District Court should continue to "have and exercise all the jurisdiction possessed and exercised by it on August 31, 1948."[15] The local Code continues in the District Court "in general term" the "full power and authority" over rules for admission to its bar. Revised Title 28 of the United States Code confirms that idea when it provides[16] that parties may plead their cases "by counsel, as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."

Our conclusion is in accord with the decisions of the Supreme Court upon this matter. Ex parte Burr[17] involved a motion for a *mandamus* to the Circuit Court for the District of Columbia to restore Mr. Burr to his place as an attorney at the bar of that court. After a succinct

---

7. 41 Stat. 561, D.C.Code § 11–1304 (1951).

8. Costigan v. Adkins, 1927, 57 App.D.C. 153, 18 F.2d 803, certiorari denied, 1927, 274 U.S. 760, 47 S.Ct. 769, 71 L.Ed. 1338,

9. Ex parte Burr, 1823, Fed.Cas.No.2,186, 2 Cranch C.C. 379, mandamus refused (upon statements described *infra*), 1824, 9 Wheat. 529, 22 U.S. 529, 6 L.Ed. 152.

10. Bradley v. Fisher, 1869, 7 D.C. 32, affirmed, 1872, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646.

11. 31 Stat. 1225 (1901), as amended, D.C.Code § 17–101 (1940).

12. Tulman v. Committee on Admissions and Grievances, 1943, 77 U.S.App.D.C. 357, 135 F.2d 268 (*per curiam*, Chief Justice Groner and Justices Vinson and Arnold).

13. 1869, 7 Wall. 364, 74 U.S. 364, 376, 19 L.Ed. 214, 218–219.

14. Act of May 24, 1949, § 135, 63 Stat. 89, 108.

15. Id. § 135, D.C.Code § 11–305 (1951).

16. 28 U.S.C. § 1654.

17. 1824, 9 Wheat. 529, 22 U.S. 529, 6 L.Ed. 152.

discussion of the powers of an appellate court in respect to the bar of the trial court, the Court denied the motion. Even in respect to suspension from practice Chief Justice Marshall said that the Supreme Court would interpose only in a clear case of an abuse of the discretion vested in the Circuit Court.

Ex parte Tillinghast [18] arose on a motion for a rule to show cause why a *mandamus* should not issue to the District Court of New York commanding it to restore Tillinghast to the roll of attorneys. With a short opinion signed by Chief Justice Marshall the Court overruled the motion on the ground that the Court "cannot entertain jurisdiction". A year after the first Tillinghast case a second Ex parte Tillinghast arose,[19] which involved a motion for admission to practice before the Supreme Court. The decision [20] is not here material, but in the course of the opinion Chief Justice Marshall said of the first Tillinghast decision:

> "When on a former occasion, a mandamus was applied for to restore Mr. Tillinghast to the roll of counselors of the District Court, this court refused to interfere with the matter; not considering the same within their cognizance."

Ex parte Secombe [21] arose by the same procedural means as did the Burr and first Tillinghast cases. Chief Justice Taney commenced the Secombe opinion by referring to the first Tillinghast case and the jurisdictional bar it set up. In such cases, he declared, the common-law rule obtained, from which it followed that "it rests exclusively with the court to determine who is qualified to become one of its officers, as an attorney and counselor, and for what cause he ought to be removed." This rule, he said, was subject to the limitation that the power be not arbitrarily exercised by the lower court. The case was decided upon provisions of the Minnesota statutes and the applicability of *mandamus*.

In the long history of the development of the bar at common law and in Maryland, we find no suggestion that admission to the bar of a court or rejection upon application was deemed a judicial decision. Both in the case of the barristers, who came by way of the Inns, and in the case of the attorneys and solicitors, who were officers of the courts, admission in England was in the nature of a call,[22] based upon selection and an appraisal of qualifications. The idea was the antithesis of an adjudication of rights.

By a statute in 1402, 4 Henry IV, c. 18: [23]

> "For sundry Damages and Mischiefs that have ensued before this time to divers persons of the Realm by a great number of Attornies, ignorant and not learned in the Law, as they were wont to be before this time; (2) it is ordained and stablished, that all the Attornies shall be examined by the Justices, and by their Discretions their Names put in the Roll, and they that be good and vertuous, and of good Fame, shall be received and sworn well and truly to serve in their Offices, and especially that they make no Suit in a foreign Country; * * *."

18. Minutes, Sup.Ct.U.S., "E", Jan. 12, 1829–Aug. 1, 1831, p. 1154. This case is unreported. It appears in the Supreme Court's minute book. Apparently the case was never docketed. It is referred to in Ex parte Secombe, 1857, 19 How. 9, 60 U.S. 9, 15 L.Ed. 565, and in Ex parte Bradley, supra, as Tillinghast v. Conkling.

19. 1830, 4 Pet. 108, 29 U.S. 108, 7 L.Ed. 798.

20. The holding was that the Supreme Court will not punish an attorney for contempt, for which he was stricken from the District Court roll of attorneys, by forbidding him admission to its own bar.

21. 1857, 19 How. 9, 60 U.S. 9, 15 L.Ed. 565.

22. 2 Holdsworth, History of English Law 311–318, 484–509 (1936); 6 id. 431–499.

23. 1 Alexander, British Statutes 279 (Coe's ed. 1912).

There were no early statutes which attempted regulation of barristers.[24] They were called to the bar of one of the Inns, were promoted by the Inn to Reader and then Bencher. "Those thus selected were and are tacitly allowed by the judges to practise in the courts," Holdsworth tells us.[25]

In Maryland the distinction between barristers and attorneys did not exist, and practicing lawyers were "attorneys".[26] The statute of 4 Henry IV, above quoted, was apparently deemed to be in force and applied to all lawyers.[27] In 1715 the Maryland Assembly enacted a statute that "no attorney, or other person whatsoever, shall practice the law in any of the courts of this province, without being admitted thereto by the justices of the several courts, who are hereby empowered to admit and suspend them".[28] This appears to have been the only Maryland statute relating to the admission of attorneys in effect in 1799, when Herty's *Digest* was published,[29] or in 1799–1800, when Kilty's *Laws of Maryland* was published. There was in Maryland an act passed in 1783 which gave to a rejected applicant in the courts of first instance an appeal to the superior courts, but this statute apparently expired by its own terms after three years.[30] This right of appeal was considered by the Court of Appeals of Maryland in State v. Johnston [31] in May, 1786. It is plain from that report that no appeal existed other than the strictly limited one granted by that statute.

So far as the District of Columbia is concerned, the Organic Act of 1801 [32] retained all laws of Maryland then in effect; the Code of 1901 specifically repealed acts of the Maryland Assembly theretofore in effect here and retained only the common law and the British statutes in force in Maryland in 1801. It would thus appear that the statute of 4 Henry IV, which we have quoted, was the law in the District of Columbia. In any event, under common law or under Maryland statutes, we find no concept that admission to the bar or rejection upon the basis of qualifications as evaluated by the judges is a judicial decision or a judgment, or appealable as such.

The statute of the District of Columbia, which has been in effect since 1920,[33] is, in pertinent part:

"The District Court of the United States for the District of Columbia in general term shall have full power and authority from time to time to make such rules as it may deem proper respecting the examination, qualification, and admission of persons to membership in its bar and their censure, suspension, and expulsion; * * *."

The same provision, with immaterial textual changes, has been in effect since 1863 as a District of Columbia statute.

The decisions of the state courts are not helpful in our problem, because in practically every state admission to the bar is by the appellate court, usually the highest court. Under such circum-

---

24. 4 Holdsworth, op. cit. supra note 22, at 434–435.

25. 2 id. 496.

26. There is no heading "Barristers" or "Solicitors" in Herty's Digest of the Laws of Maryland; only a heading "Attorneys". The same is true of Kilty's Laws of Maryland.

27. Kilty, Report of All Such English Statutes as Existed at the Time of the First Emigration of the People of Maryland, and Which by Experience Have Been Found Applicable to Their Local and Other Circumstances; * * * 225

(1811); Alexander, British Statutes in Force in Maryland (Coe's ed. 1912).

28. Act of April, 1715, c. XLVIII, § XII, 1 Kilty, Laws of Maryland (1799).

29. See Herty, Laws of Maryland, Attorneys § 2; id., County Courts § 6; id., General Court; id., Appeals, Court of; id., Appeals.

30. See Act of April, 1783, c. XVII, 1 Kilty, Laws of Maryland (1799).

31. 2 Har. & McH., Md., 160.

32. 2 Stat. 103, D.C.Code XXVII (1951).

33. 41 Stat. 561, D.C.Code § 11–1301 (1951).

stances there is no question of appeal. Our examination of Martindale-Hubbell's *Law Digest,* Vol 3, indicates that in only three states, Connecticut, Mississippi and Georgia, is admission by the trial courts. The procedure in Connecticut is not helpful in our present problem. Admission there is largely in the hands of the bar. An applicant must file a public notice of his desire to take the examination, and the intended application must be approved at a meeting of the bar of the county in which he wishes to be admitted.[34] The court will not inquire into the considerations which impel the action of the bar, looking only to see if there has been a fair investigation of the facts or an unjust deprivation of a right. The action of the bar and of the court is a discretionary one. A rejected applicant may file a petition in the county court, and to such a petition the county bar, as in O'Brien's case,[35] or the bar examining committee, as in the Rosenthal case,[36] may be required to answer. In the Rosenthal case the Supreme Court of Errors of Connecticut said:

"Proceedings for the admission of attorneys are not actions or suits at law; they are in the nature of investigations by the courts of their representatives to determine whether particular candidates are qualified to become its officers. Fairfield County Bar v. Taylor, supra, 60 Conn. [11], 15, 22 A. 441, 13 L.R.A. 767; In re Durant, 80 Conn. 140, 148, 67 A. 497, 10 Ann.Cas. 539. Such an investigation, like that authorized by the statutes to determine the fitness of physicians and surgeons and other persons, to carry on professions or callings in which the public has such an interest as to bring them within the regulatory scope of the police power, is really administrative in its nature. Brein

v. Connecticut Eclectic Examining Board, 103 Conn. 65, 85, 130 A. 289. Courts or their judges must of necessity perform many acts of an administrative nature, acts which so far pertain to the judicial department of the government that they could not properly be performed by the representatives of its other branches, as, for example, the appointment and removal of clerks of courts and other such officers; but in the method of the performance of such administrative functions, courts are under no more stringent limitations than are the executive or legislative departments in similar situations. * * * While the determination of the qualifications of attorneys to be admitted to practice in our courts pertains to the judicial department, the decisions which must be made in carrying out the procedure established by the rules of the judges to accomplish that end are not judicial in their nature and may properly be vested in the bar examining committee, including the power to determine what law schools shall be approved as furnishing a sufficient educational basis for admitting a candidate to the examination."[37]

The Connecticut court holds, however, that despite wide discretion neither the bar nor the court in that state can depart from the ten-year practice requirement for admission without examination.[38] From a dismissal of his petition an applicant may have a review upon appeal. But it appears that the review which is permitted is in the nature of an administrative appeal, sharply limited in scope, as the cases we have noted and those therein cited clearly show. The whole theory in Connecticut seems to be that the bar, to whose ranks the appli-

34. Connecticut Practice Book, Sec. 4 *(Fifth)* (1934); In re O'Brien's Petition, 1906, 79 Conn. 46, 63 A. 777.

35. In re O'Brien's Petition, 1906, 79 Conn. 46, 63 A. 777.

36. Rosenthal v. State Bar Examining Committee, 1933, 116 Conn. 409, 165 A. 211, 87 A.L.R. 991.

37. Id., 165 A. at pages 213–214.

38. Application of Dodd, 1945, 132 Conn. 237, 43 A.2d 224.

cant seeks admission, is best able to evaluate his merits.

In Georgia the rules, adopted by convention of judges of the superior courts, permit a rejected applicant to controvert the grounds upon which the adverse report of the examining committee is based, and give the applicant an opportunity to be heard and to present evidence.[39] From the order and judgment then entered, an appeal lies,[40] in which the state is the defendant in error. No similar procedure is provided by the rules in this jurisdiction. In respect to Mississippi we find no reported appeals.

The decision and opinion in In re Summers [41] did not change the rule long theretofore laid down. The view of a majority of this court in regard to the Summers case is to be found in two opinions in the Carter case,[42] one the dissenting opinion of the author of the present opinion, in which Chief Judge Stephens and Judge Proctor concurred, and the other the concurring opinion of Judge Wilbur K. Miller. Those four judges constituted a majority of the court of seven judges there sitting. Because the discussion of admission to the bar in those opinions might be characterized as *dictum*, we restudy the Summers case, since the point is here directly in issue.

Summers alleged in his petition for *certiorari* that the denial of his prayer for admission to the bar of Illinois was on the sole ground of his conscientious scruples against war. He challenged the right of the Illinois court to exclude him in violation of the principles of the First Amendment. He had made the same allegations in his petition for admission filed with the Illinois court. The answer of the Illinois justices was (1) that the proceedings were not "a matter of judicial cognizance" in Illinois and no case or controversy existed in the United States Supreme Court and (2) that the refusal to admit on the sole ground of conscientious objection to military service did not violate the Amendment. The Supreme Court accepted the "authoritative commentary" of the Illinois justices as establishing for that state the non-judicial character of an application to the bar—the petition for admission does not constitute a judicial proceeding "but is a mere application for appointment as an officer of the court." It described the action of the Illinois court "as a ministerial act which is performed by virtue of the judicial power, such as the appointment of a clerk or bailiff or the specification of the requirements of eligibility or the course of study for applicants for admission to the bar, rather than a judicial proceeding." But, said the Court, for the purpose of determining whether the proceeding involves a case or controversy under Article III of the Constitution it must for itself appraise "the circumstances of the refusal" to admit. The latter quoted expression is the key to the opinion. Although action on a petition for admission to the bar is an administrative act rather than a judicial proceeding, *the circumstances of its refusal* may create a case or controversy cognizable by the judiciary.

There is nothing new, novel or startling in that pronouncement. Many transactions fall within the scope of the concept. An administrative officer does an administrative act; absent a statute no review lies in a court. But if he violates a right, especially a constitutional right, of a person a case is presented which invokes judicial power. Renegotiation matters in the Tax Court are a ready example. Redetermination of excess profits in those cases is an administrative function, performed in the ex-

39. Ga.Code Ann. § 24–3306 (Rule 6) (Supp.1947).

40. Shotkin v. State, 1945, 73 Ga.App. 136, 35 S.E.2d 556, certiorari denied, 1946, 329 U.S. 740, 67 S.Ct. 56, 91 L.Ed. 638, application for allowance of appeal denied, 1946, 329 U.S. 828, 67 S.Ct. 182, 91 L.Ed. 703.

41. 1949, 325 U.S. 561, 65 S.Ct. 1307, 89 L.Ed. 1795.

42. In re Carter, 1951, 89 U.S.App.D.C. 310, 312, 320, 324, 192 F.2d 15, 17, 25, 29.

ecutive branch of the Government. No matter how fierce the disputes may be concerning facts or ordinary legal questions, no case or controversy in the judicial sense arises. But, if it be claimed that the Tax Court has violated a constitutional right, judicial authority may be invoked.[43]

The Supreme Court made perfectly clear in the Summers case its acceptance of the Illinois view that admission to its bar in an ordinary case is "a ministerial act which is performed by virtue of the judicial power". That was made clear by the portions of the opinion which we have already described. It appears clearly again in the following passage:

"Thus a court created to administer the laws of Illinois as it understands them, and charged particularly with the protection of justice in the courts of Illinois through supervision of admissions to the bar, found itself faced with the dilemma of excluding an applicant whom it deemed disqualified for the responsibilities of the profession of law or of admitting the applicant because of its deeply rooted tradition in freedom of belief. The responsibility for choice as to the personnel of its bar rests with Illinois."[44]

The expressions "supervision" and "choice as to the personnel" describe an administrative function. The Court made equally clear its view that the assertion of a right, in the Summers case a constitutional right, is the point at which the case or controversy arises. It made that view clear in the opening of the opinion, which we first described above, and in the following passages:

"A case arises, within the meaning of the Constitution, when any question respecting the Constitution, treaties or laws of the United States has assumed 'such a form that the judicial power is capable of acting on it.' "[45]

"A claim of a present right to admission to the bar of a state and a denial of that right is a controversy. When the claim is made in a state court and a denial of the right is made by judicial order, it is a case which may be reviewed under Article III of the Constitution when federal questions are raised and proper steps taken to that end, in this Court."[46]

" * * * Only a decision which violated a federal right secured by the Fourteenth Amendment would authorize our intervention."[47]

The expression "A claim of a present right to admission to the bar" means something more than a mere application under the rules of court. There is no inherent right to practice law.[48] The right arises after qualification under the rules has been established.

The sum total of the Summers case, as we read it, is an affirmation of the general rule that admission to the bar of a court is a ministerial act performed by virtue of judicial power but that denial of admission in asserted violation of a right, especially a constitutional right, creates an opportunity for invocation of judicial power; the controversy may then be cast in a form which becomes

---

43. Psaty & Fuhrman v. Stimson, 1950, 87 U.S.App.D.C. 47, 182 F.2d 985, and cases there cited.

44. Supra, 325 U.S. at pages 570–571, 65 S.Ct. at page 1312.

45. Id., 325 U.S. at pages 566–567, 65 S.Ct. at page 1311.

46. Id., 325 U.S. at pages 568–569, 65 S.Ct. at page 1312.

47. Id., 325 U.S. at page 571, 65 S.Ct. at page 1313.

48. In re Keenan, 1943, 314 Mass. 544, 50 N.E.2d 785; In re Berkwitzk, 1948, 323 Mass. 41, 80 N.E.2d 45; Cohen v. Wright, 1863, 22 Cal. 293, 319; In re Investigation of Conduct of Examination, Etc., 1934, 1 Cal.2d 61, 33 P.2d 829; In re Maddox, 1901, 93 Md. 727, 50 A. 487, 55 L.R.A. 298. See Yeiser v. Dysart, 1925, 267 U.S. 540, 45 S.Ct. 399, 69 L. Ed. 775.

a judicial proceeding in the most literal sense.

Reverting to the portion of the Summers opinion in which the Court made clear its acceptance of the Illinois view of admission to its bar, absent a claim of violation of a federal right, we note again that in the District of Columbia an application for admission is not a "cause" and rejection is not a "judgment". Under the Summers decision that view would be conclusive.

■■ Of course admission to the bar is an exercise of judicial power. Courts have no other power. They have no ministerial, executive or administrative power as such. But in the course of the exercise of judicial power they perform many administrative or ministerial acts, many acts which are not "decisions" or judgments. Courts appoint clerks and bailiffs, order supplies, write and promulgate rules, and so on. Indeed, if every act performed by virtue of judicial power were deemed a "decision", there would be no meaning to the restrictive intention in the section of the statute with which we are dealing. The Supreme Court, in the opinion in Ex parte Garland,[49] in which it declared admission to the bar to be the exercise of judicial power, explicitly pointed out that in Ex parte Secombe, supra, it had "observed that it has been well settled by the rules and practice of common law courts, that it rests exclusively with the court to determine who is qualified to become one of its officers, as an attorney and counselor, and for what cause he ought to be removed." We have already pointed out the statement of the Court in Ex parte Bradley, supra.

■ This court and many others have said many times that members of the bar are officers of the respective courts to which they are admitted. See, for example, the description of the station and function of lawyers in this court's opinion in Booth v. Fletcher.[50] Certainly, in so far as that characterization has any meaning, admission to the bar is not a judicial decision. The selection of officers is not a judicial proceeding or the rendering of a judicial judgment. It is by the statutes we have described not a cause. It is by Supreme Court pronouncement, in Ex parte Bradley, supra, not a judgment. It is a judicial act in the sense that it is an act performed by a judicial body in its official capacity.

Brooks complains that he was not given a hearing before the District Court. He cites Goldsmith v. U. S. Board of Tax Appeals[51] in support of this position. But we think that opinion is contrary to his contentions in three respects. In the first place the Court carefully defined the right to a hearing upon an application for admission in these words:

"We think that the petitioner having shown by his application that, being a citizen of the United States and a certified public accountant under the laws of a State, he was within the class of those entitled to be admitted to practice under the Board's rules, he should not have been rejected upon charges of his unfitness without giving him an opportunity by notice for hearing and answer."[52]

What Goldsmith showed, and what the Court described as the prerequisite to the right to hearing, Brooks did not show. Brooks did not show by his application that he was within the class of those entitled to be admitted under the court's rules. In the second place we do not find in the papers any request by Brooks to the District Court that he be heard. In the third place Brooks

---

49. 1867, 4 Wall. 333, 379, 71 U.S. 333, 379, 18 L.Ed. 366, 370.

50. 1939, 69 App.D.C. 351, 355–356, 101 F.2d 676, 680–681, certiorari denied 1939, 307 U.S. 628, 59 S.Ct. 835, 83 L.Ed. 1511.

51. 1926, 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494.

52. Id., 270 U.S. at page 123, 46 S.Ct. at page 217.

had a full hearing before the Committee; in the Goldsmith case there was no Committee, so the hearing had to be before the Board.

We think we ought to point out the sweep of Brooks's contentions if they were sustained. If the rejection of his application was a judicial decision it should have been made upon a record of evidence presented in open court. But the whole purport of admission to the bar in this country, and in this jurisdiction, and in our own court, is that the Committee and the court can inquire into the applicant's character by confidential inquiry and into his professional qualifications by an examination considered and marked in confidence.[53] We ourselves charge the applicant a fee of $50.00 for the specific purpose of having a confidential investigation made.[54] The District Court also charges a fee to be paid the examiners.[55] If consideration of the application is a case, cause or controversy within the judicial meaning of those words, and if the action on the application is a judicial judgment or decision, we see no escape from an abandonment of the whole of the present system, long since established and existing. We can find no justification for such a step.

We add one further observation. Brooks's claim of a right to appeal is procedurally defective. In the first place, if the letter of the Chief Judge of the District Court on October 11, 1951, is a decision from which an appeal lies, so was his letter of May 24, 1950. If that letter was a decision the rules allow thirty days for notation of an appeal therefrom [56] and one year for the filing of a motion for relief from the decision upon newly discovered evidence.[57] Brooks filed no appeal from that "order" (of May 24, 1950) and filed his motion a year and three months after its alleged date. His claimed right of appeal is stated by him to be from the denial of the motion.[58] The motion itself was tardy, and, moreover, an appeal from its denial would not bring up the validity of the original action, as Brooks seeks to do, but would involve only the validity of the denial of the motion. In the second place Brooks's claim is that, since no opposition was filed to his motion, he should have had judgment by default. It is the failure to grant him this default judgment that he seeks to correct by the appeal. But there was no opponent to contest his motion. The pending proceeding was upon his application, and there was no opponent.

However we do not base our decision upon the procedural defects. Our holding is, as we have stated, that an application for admission to the bar is not a case, cause or controversy, that the rejection of an applicant upon an evaluation of his qualifications for admission under the rules is not a decision or judgment, and that the action of the District Court in failing to admit an applicant pursuant to such an evaluation of qualifications is not appealable.

Upon the foregoing basis we exercise our discretion against permission to file a complaint seeking *mandamus*. At the same time we point out that the proper action in the instant case was that the Clerk of the District Court or the court itself receive and file the proffered notice of appeal; then, upon a motion filed in this court to dismiss the appeal, or *sua sponte*, this court would have determined for itself the jurisdictional question whether the "decision"

---

53. Bar Examinations and Requirements for Admission to the Bar 77, 262–268 (Shepard's Citations 1952).

54. General Rules U. S. Court of Appeals for the District of Columbia Circuit 7 (b).

55. Local Civil Rules U. S. District Court for the District of Columbia 93(h). (Prior to amendment of October 9, 1952, 80 Wash.L.Rep. 1069, this was Rule 93(j).)

56. Fed.Rules Civ.Proc. 73(a), 28 U.S.C.A.

57. Id., 60(b).

58. This motion was entitled "Motion for Reconsideration of Application; for Consideration of New Information of Application, and for Admission."

sought to be reviewed was a "final decision".[59] Every court has authority to determine for itself in the first instance, whether it has jurisdiction to consider a proffered proceeding. For the District Court to decide for itself that a "decision" rendered by it, and sought to be reviewed, was not of appealable character, and for that reason to forbid the filing of a notice of appeal by a party seeking to have the decision reviewed, was for that court to deny access to the Court of Appeals for determination of the jurisdictional question—except of course, through application for a writ of *mandamus.* The effect was for the District Court to deny to the Court of Appeals opportunity to determine for itself through ordinary procedure whether or not the questioned decision of the District Court was of appealable character.

The motion for leave to file the complaint is

Denied.

EDGERTON, Circuit Judge (concurring in the result).

As the court points out near the end of its opinion, Brooks made no attempt to appeal within the time fixed by the Federal Rules of Civil Procedure. We should therefore deny his present motion. Moreover it is, as the court says, "obvious that Brooks failed, in the papers he filed with the District Court, to show that he was entitled to admission to the bar of that court * * *." He showed he was not entitled. Therefore an appeal, even if promptly filed, would have been dismissed on motion. This is a second reason why we should deny Brooks's present motion. Accordingly we have no occasion to consider the question the court discusses and answers in the negative, "whether rejection by the District Court of an application for admission to its bar is a decision within the meaning of Section 1291 of Title 28 of the United States Code" and is therefore appealable. What the court says on this subject appears to me to be

dictum rather than decision. But lest it be followed in future cases I think it should not go unanswered.

The Supreme Court has held recently, expressly, and without qualification that "A claim of a present right to admission to the bar of a state and a denial of that right is a controversy." In re Summers, 1945, 325 U.S. 561, 568, 65 S.Ct. 1307, 89 L.Ed. 1795. No one suggests that there is a difference in this respect between the bar of a state and the bar of the District Court. Yet this court says it is "holding * * * that an application for admission to the bar is not a case, cause or controversy, that the rejection of an applicant * * * is not a decision * * *."

The Supreme Court reviewed, as the decision of a controversy, the Illinois court's refusal to admit Summers to the Illinois bar. The Supreme Court was indeed concerned with "the circumstances of the refusal" but only for a reason that has nothing to do with the present case. Whether a final decision of a state court may or may not be reviewed in the Supreme Court depends upon circumstances. Accordingly the Court said: "For the purpose of determining whether the action of the Supreme Court of Illinois in denying Summers' petition for an order for admission to practice law in Illinois is a judgment in a judicial proceeding which involves a case or controversy *reviewable in this Court* under Article III, § 2, Cl. 1 of the Constitution of the United States, we must for ourselves appraise *the circumstances of the refusal.*" 325 U.S. at page 566, 65 S.Ct. at page 1310. (Emphasis supplied.) To like effect, immediately after the Court's unqualified statement that "A claim of a present right to admission to the bar of a state and a denial of that right is a controversy" the Court said: "When the claim is made in a state court and a denial of the right is made by judicial order, it is a case which *may be reviewed* under Article III of the Constitution *when federal questions are raised* and proper steps taken to that end, *in this*

59. United States v. Mattingly, 1922, 52 App.D.C. 188, 285 F. 922.

*Court."* 325 U.S. at pages 568–569, 65 S.Ct. at page 1312. (Emphasis supplied.)

This court treats the proposition (1) that circumstances determine whether a controversy over a claimed present right to admission to a state bar is reviewable by the Supreme Court, as if it meant (2) that circumstances determine whether denial of a claimed right to admission to a bar creates a controversy. But these two propositions are distinct, and the second does not follow from the first. This court suggests no technical, practical, or other reason for the second proposition. Moreover the Supreme Court, so far from announcing or suggesting the second proposition, contradicted it in the Summers case by stating categorically that a denial of a claimed present right to admission "is a controversy".

This court emphasizes the fact that the District Court's refusal to admit Brooks was not by formal order but by letter. It overlooks the fact that the Illinois court's refusal to admit Summers was not by formal order but by letter. 325 U.S. at page 564, 65 S.Ct. 1309. This court takes precisely the view the Illinois court took of the question whether such a refusal is an administrative matter or a judicial decision of a controversy. The Supreme Court took the opposite view of that question. This court quotes as if it were a statement of the Supreme Court's own view what I understand to be merely the Supreme Court's statement of the Illinois view, *i. e.* that the matter is administrative. The Supreme Court recognized that the Illinois decision would have ended the controversy but for the fact that the particular "circumstances of the refusal" to admit Summers made the decision reviewable in the Supreme Court. But that is irrelevant here, since all final decisions of the District Court are reviewable in this court or the Supreme Court and all decisions of this court are reviewable in the Supreme Court.[1]

The Summers doctrine is not new. As long ago as 1866 the Supreme Court said, in discussing the admission of attorneys, "Their admission or their exclusion is not the exercise of a mere ministerial power. It is the exercise of judicial power, and has been so held in numerous cases." Ex parte Garland, 4 Wall. 333, 71 U.S. 333, 378–379, 18 L.Ed. 366. The Court cited with approval Matter of Cooper, 1860, 22 N.Y. 67, 81, in which the New York Court of Appeals held that a trial court's order denying an application for admission to the bar was appealable, found error, and reversed.

In Carver v. Clephane, 1943, 78 U.S. App.D.C. 91, 137 F.2d 685, the District Court, after a hearing, had dismissed a complaint that sought to require its Committee on Admissions and Grievances to certify Carver for admission to the District Court's bar. Carver appealed to this court. We considered and affirmed the validity of the District Court's order denying Carver's claimed right to admission to the bar. We thereby gave an affirmative answer to the question whether such an order is appealable.

The courts say "the whole purport of admission to the bar in this country, and in this jurisdiction, and in our own court, is that the Committee and the court can inquire into the applicant's character by confidential inquiry * * *." This seems to imply that applicants may be finally rejected on the basis of secret attacks on their character by secret informants. I think the law is otherwise. A report on Admission of Attorneys from Other Jurisdictions, prepared by Goscoe O. Farley, Secretary of the Committee of Bar Examiners of the State Bar of California, for the Survey of the Legal Profession and published in Bar Examinations and Requirements for Admission to the Bar (1952), seems to

---

1. "The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States * * * except where a direct review may be had in the Supreme Court." 62 Stat. 929, 28 U.S.C.(Supp. V) § 1291. "Cases in the courts of appeals may be reviewed by the Supreme Court". 28 U.S.C.(Supp. V) § 1254.

show that the prevailing practice in this country is not what this court supposes. The report says (p. 161–162): "the applicant who has never been convicted of a crime or disciplined by a grievance committee, but nevertheless is known to be an unethical practitioner by his fellow lawyers, often is able to get his application accepted by the examining board. There are several reasons for this. In the first place, the information obtained by The National Conference of Bar Examiners is confidential (it needs to be so, else many sources of information would be closed to it) and hence occasionally an examining board will have derogatory information about an applicant, and not be able to use it. This insufficiency can sometimes be overcome by skillful interrogation of the applicant so as to get him to admit the wrongdoing, or by proving it through another (not confidential) source." The Supreme Court said in 1866: "Attorneys * * * are officers of the court, admitted as such by its order, upon evidence of their possessing sufficient legal learning and fair private character. It has been the general practice in this country to obtain this evidence by an examination of the parties." Ex parte Garland, 4 Wall. 333, 71 U.S. 333, 378, 18 L.Ed. 366.

I agree with this court that if, as I think, the District Court's rejection of petitioner's application was a judicial decision it should have been made upon a record of evidence presented in open court. But I disagree with the court's statement that if the rejection is appealable this court must assume the burden of evaluating qualifications for admission to the bar of the District Court. This seems to me as erroneous as it would be to say that if the District Court's denial of a claim in contract or tort is appealable this court must assume the burden of evaluating the evidence in such cases. Our function is not to retry cases but to determine whether in our opinion the trial court followed the law.

When secret informants have made secret charges against an applicant possibly a Committee on Admissions may de-

cline to recommend his admission, for its action is not final if he chooses to take his application to court. But for a court finally to reject an applicant because of secret charges by secret informants would be as shocking as to disbar a lawyer, or convict a man of crime, on such charges. By innocent mistake or incompetence or carelessness or malice a confidential informant may make false charges. Elementary fairness and therefore due process of law forbid finally rejecting, on grounds of character, an otherwise qualified applicant without allowing him a public opportunity to confront his accusers and refute their charges. The right to a public hearing is also a necessary safeguard against rejection because of charges which are true but irrelevant, *e.g.* that an applicant has unconventional social, political, or economic views.